**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Emmett Lovell NABORS,
Defendant–Appellant.**

No. 89–1488.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 22, 1990.

Decided April 27, 1990.

David J. DeBold, Asst. U.S. Atty. (argued), Detroit, Mich., for plaintiff-appellee.

Douglas R. Mullkoff (argued), Ann Arbor, Mich., for defendant-appellant.

Before MARTIN and RYAN, Circuit Judges; and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Emmett Lovell Nabors appeals his conviction and sentence for assaulting a federal agent, possession of crack cocaine with the intent to distribute, use of a firearm during the commission of both a violent crime and a drug trafficking crime, and attempted escape.

In July 1988, Special Agent Joseph Secrete, Bureau of Alcohol, Tobacco, and Firearms, began investigating Nabors, who was on probation at that time for the felony of carrying a concealed weapon, for possession of firearms. On July 21, 1988, Secrete obtained two search warrants authorizing searches for weapons and other evidence at two Detroit, Michigan residences used by Nabors. The next day, a team of federal, state, and local agents planned and initiated the search of one of those residences, an apartment occupied by Nabors and his girlfriend, Michelle Townsend.

On the day of the search, the agents saw Nabors leave the apartment. At that point, the agents cancelled the search because they wished to search the apartment when Nabors was present to ensure that a firearm would be found in his possession. However, twenty minutes later, Nabors returned to the apartment with another individual, and the agents initiated their search. The agents knocked on the apartment door and yelled, "Police!," and, "Police search warrant!" Moments later, the agents rammed the apartment door and Bureau of Alcohol, Tobacco, and Firearms Agent Roger Guthrie entered the apartment. Nabors fired two rifle shots at Guthrie, hitting him once in the right cheek. Nabors then fled the second-story apartment by jumping out of a bathroom window. He was soon apprehended by the search team following his leap.

A search of the apartment produced the rifle Nabors fired at Guthrie, a pistol and ammunition, a scale loaded with 12.757 grams of crack cocaine, and cocaine distribution paraphernalia.

On July 22, 1988, Nabors was arrested and held on a complaint charging him with the attempted murder of a federal agent, in violation of 18 U.S.C. § 1114. On August 25, 1988, Nabors was indicted for attempted murder of a federal agent, 18 U.S.C. § 1114, assaulting a federal agent with a deadly weapon, 18 U.S.C. § 111, two counts of being a felon in possession of firearms, 18 U.S.C. § 922(g)(1), possession of cocaine with the intent to distribute, 21 U.S.C. § 841(a)(1), use of firearms during a drug trafficking crime, 18 U.S.C. § 924(c), and use of a firearm during a crime of violence, 18 U.S.C. § 924(c). He was arraigned on these charges on August 31, 1988.

On September 17, 1988, during his detention at a local jail, Nabors attempted to escape custody by impersonating another detainee who was being released on bond. A superseding indictment was issued on October 18, 1988 adding a count of attempted escape, 18 U.S.C. § 751, to the original charges. Because Nabors was not indicted within thirty days of his arrest, the district court dismissed the attempted murder count which was the sole subject of the complaint filed before the magistrate at Nabors's arrest. Nabors successfully severed the attempted escape count for which he later pled guilty.

Nabors's jury trial for possession and assault began on December 20, 1988. On December 22, 1988, he was convicted on all counts. At sentencing, the court granted the government's motion to dismiss one of the two felon in possession of a firearm

convictions. Nabors was sentenced to 137 months on the assault, possession of a firearm by a felon, and possession of cocaine counts. He also received two five-year sentences consecutive to the 137 months for each of his two convictions under 18 U.S.C. § 924(c)(1) for the use of a firearm during a drug trafficking crime and use of a firearm during a crime of violence. In addition, Nabors received five years of supervised release after his release from custody.

■ Nabors first contends that the law enforcement agents violated the "knock-and-announce" requirements of 18 U.S.C. § 3109 in executing the search warrant for his apartment. Consequently, Nabors argues that the evidence seized during the search should have been suppressed.

18 U.S.C. § 3109 provides that:
[An] officer may break open any outer or inner door or window of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Nabors argues that the time between the knock-and-announcement in this case insufficiently complies with the statute.

■ If evidence is procured in violation of § 3109, that evidence must be suppressed. *Miller v. United States,* 357 U.S. 301, 313–314, 78 S.Ct. 1190, 1197–1198, 2 L.Ed.2d 1332 (1958). Courts have, however, upheld searches which failed to comply with § 3109 where exigent circumstances have existed which render strict compliance inappropriate and imprudent. For example, in *United States v. Spinelli,* 848 F.2d 26 (2d Cir.1988), the court excused the officers' noncompliance with the knock-and-announce statute where the suspect had a past history of firearm possession and a knowledge of the officers' surveillance of his residence, endangering the destruction of his drug manufacturing laboratory. Likewise, a search violating 18 U.S.C. § 3109 was upheld when there were two exigent circumstance grounds; first, the defendants were believed to be armed and

dangerous; second, the officers had information that the defendants had substantial quantities of drugs which could be easily disposed of. *United States v. Barrientos,* 758 F.2d 1152 (7th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 810, 88 L.Ed.2d 785 (1986). In *United States v. Pearson,* an improperly executed search under § 3109 was upheld where the targeted individual was in a residence with other people and was armed. 746 F.2d 787 (11th Cir.1984). Nabors contends that the facts of this case mirror those in *United States v. Rodriguez,* 663 F.Supp. 585 (D.D.C.1987), where the police waited mere seconds after their announcement before entering the defendant's dwelling. In *Rodriguez,* however, the police had no concern for their safety due to probable firearm possession by the defendant, nor did they have any reason to believe that evidence of narcotics was on the premises.

■ While it might be argued that the officers waited an insufficient time prior to knocking down the door to the apartment, certainly we agree with the district court that exigent circumstances justified the officers' behavior. The affidavit for the warrant indicates that Nabors was suspected of trafficking in narcotics, was a felon in the possession of an array of firearms, and habitually wore a bullet-proof vest. We do not hold, as Nabors contends, that every time law enforcement personnel suspect that the subject of a search warrant possesses a firearm, a split-second announcement followed by a forced entry sufficiently complies with 18 U.S.C. § 3109. Given the facts confronting the officers, including the threat to their own safety, the safety of those in the apartment, and the need to preserve narcotics evidence, there was compliance with the requirements of 18 U.S.C. § 3109. While the officers had the opportunity to search the apartment in Nabors's absence, the decision to wait until he was present was justified by their need to prove that Nabors was a felon in the *possession* of a firearm. We note that law enforcement officers may not take lightly the requirement of § 3109 that bursting into apartments is permitted only "after notice

of [the officers'] authority and purpose [and they are] refused admittance...." 18 U.S.C. § 3109. Cases in which officers make a forced entry seconds after announcing their authority and purpose will be carefully scrutinized in the future to determine whether there is compliance with the requirements of § 3109. *Cf. United States v. Burton,* 894 F.2d 188, 192–93 (6th Cir.1990) (Jones, J., concurring). Here, in view of the exigent circumstances we have discussed, we conclude that, while the question is close, there was compliance with § 3109 and the evidence discovered in the search of the apartment was properly admitted at trial.

■ Nabors next contends that he was tried in violation of his statutory and constitutional rights to a speedy trial. Nabors was indicted on the thirty-third day following his arrest. 18 U.S.C. § 3161(b) requires that an indictment must be filed within thirty days of an arrest. At the time he was indicted, the sole offense charged in the complaint against him was the attempted killing of a federal agent. Consequently, the district court, under 18 U.S.C. § 3162(a)(1), dismissed the attempted murder count. Nabors argues that if one count in the indictment must be dropped because of a constitutional or statutory speedy trial violation, the entire indictment must be dropped. On this, he is wrong. The statutory and constitutional provisions governing the speedy trial of a criminal defendant do not require that every offense chargeable from a criminal episode be dismissed for failing to comply with the thirty-day time limit for indictments following an arrest. Rather, 18 U.S.C. § 3162(a)(1) only requires the dismissal of the offense charged in the complaint for a violation of 18 U.S.C. § 3161(b). *United States v. Napolitano,* 761 F.2d 135, 137–138 (2d Cir.), *cert. denied,* 474 U.S. 842, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985); *United States v. Pollock,* 726 F.2d 1456, 1461–1462 (9th Cir.1984). Moreover, Nabors was indicted only three days after the thirty-day statutory period had expired. Six of those days were excludable under 18 U.S.C. § 3161(h)(3) because Nabors was hospitalized for leg injuries sustained in his leap from the apartment and was therefore unavailable. Likewise, five days were excludable under 18 U.S.C. § 3161(h)(1) because of other proceedings involving Nabors, including his first appearance on the complaint, his detention hearing, and a preliminary examination. Considering these appropriately excludable dates, Nabors was indicted well within the thirty-day time period required in 18 U.S.C. § 3161(b). We do not find any prejudice to Nabors's sixth amendment right to a speedy trial from the failure of the trial judge to dismiss the remaining counts of the indictment.

■ Nabors also contends that his statutory right to a speedy trial was violated because he was tried more than seventy days after his original indictment. If an indicted defendant does not offer a guilty plea, the Speedy Trial Act requires that the defendant be tried within seventy days of the filing date of the indictment or the defendant's first appearance before a judicial officer on the charges in the indictment, whichever comes last. 18 U.S.C. § 3161(c)(1).

Although Nabors's trial did not begin within seventy calendar days of his appearance on the charges in the original indictment, the Speedy Trial Act provides a litany of exclusions from the calculation of the seventy-day period. *See* 18 U.S.C. § 3161(h). Among those excludable periods are delays resulting from any pretrial motion. 18 U.S.C. § 3161(h)(1)(F). Pretrial motion delay is calculated "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id.* In this case, Nabors was arraigned on the charges in his August 26, 1988 indictment on August 31, 1988. The period from October 3, 1988 through December was properly excluded from the seventy-day period under the pretrial motion exclusion. *Id.* Likewise, the time period from September 20, 1988 to October 3, 1988 was properly excluded from the seventy-day period by the trial judge under the "ends of justice" exclusion. 18 U.S.C. § 3161(h)(8). Consequently, the defendant was tried well within the

seventy-day period calculated from his first appearance before a judicial officer.

Nabors also contends that his sixth amendment right to a speedy trial was violated by the delays in this case. However, "our resolution of his Speedy Trial Act claim eliminates the necessity of reaching the constitutional claim.... [I]t will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated." *United States v. DeJesus*, 887 F.2d 114, 116 n. 1 (6th Cir.1989). No such circumstances are presented here.

■ Nabors claims that the district court erred by denying his motion to dismiss Count 6 of the superseding indictment which alleged that Nabors violated 18 U.S.C. § 924(c) by using a firearm during a drug trafficking crime. The drug trafficking crime committed by Nabors was possession of crack cocaine with the intent to distribute. According to Nabors, the term "drug trafficking crime" does not include possession of drugs with the intent to distribute. However, in *United States v. Henry*, we held that possession with the intent to distribute is a drug trafficking crime in the meaning of § 924(c). 878 F.2d 937, 943 (6th Cir.1989). The district court properly denied Nabors's motion to dismiss.

■ Nabors further contends that the district court erred by denying his motion to dismiss Count 3 of the superseding indictment which charged Nabors with assaulting an Alcohol, Tobacco, and Firearms agent in violation of 18 U.S.C. § 111. 18 U.S.C. § 111 makes it a federal crime to assault any person designated in 18 U.S.C. § 1114 while that person is engaged in the performance of his or her official duties. Nabors argues that Alcohol, Tobacco, and Firearms agents are not protected by § 111 because they are not specifically listed in § 1114. We disagree.

Alcohol, Tobacco, and Firearms agents perform the functions previously performed by revenue agents prior to the 1972 restructuring of the United States Treasury Department. The restructuring order specifically conferred the protections of § 1114 for revenue agents on the Alcohol, Tobacco, and Firearms agents. Moreover, Congress extended the protections enjoyed by revenue agents prior to the restructuring to officers performing the functions of the revenue agents after restructuring as if no reorganization had taken place. *See* 5 U.S.C. § 907(a). In other words, the Alcohol, Tobacco, and Firearms agents step into the statutory shoes of the revenue agents for the purposes of § 1114 protection.

Accordingly, prosecutions for assaulting Alcohol, Tobacco, and Firearms agents have been upheld under 18 U.S.C. § 111 by reasoning that 5 U.S.C. § 907 ensures that § 1114 is enforced as if no restructuring had taken place, thus the transfer of certain Internal Revenue Service agent functions to Alcohol, Tobacco, and Firearms agents did not render the protections of § 1114 inapplicable to the Alcohol, Tobacco, and Firearms agents. *See, e.g., United States v. Alvarez*, 755 F.2d 830, 840–841 (11th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985); *United States v. Czeck*, 671 F.2d 1195 (8th Cir. 1982); *United States v. Lopez*, 586 F.2d 978 (2d Cir.1978), *cert. denied*, 440 U.S. 923, 99 S.Ct. 1251, 59 L.Ed.2d 476 (1979).

Nabors contends, however, that because Congress amended § 1114 after the offenses committed in *Alvarez* and *Lopez*, and the amendments failed to specifically include Alcohol, Tobacco, and Firearms agents, Congress specifically meant to exclude them. We disagree. Nothing in the amendments to § 1114 affects the reasoning that 5 U.S.C. § 907 transfers the protections of § 1114 to the agents now performing the work of other agents and persons who were protected under § 1114 prior to the transfer of those functions. The current version of § 1114 protects revenue agents and those assisting them in the execution of their duties; consequently, 5 U.S.C. § 907(a) still protects Alcohol, Tobacco, and Firearms agents. In fact, *Alvarez* was decided on this theory even though congressional amendments to § 1114 were made after the date of the *Lopez* decision. Nabors also argues that because § 1114 does not explicitly mention Alcohol, Tobac-

co, and Firearms agents, the principle of lenity requires the reversal of his assault conviction. As noted in *Alvarez*, "the principle of lenity does not dictate that other pertinent statutes, such as 5 U.S.C. § 907(a), be disregarded.... 5 U.S.C. § 907(a) existed at the time the crime was committed, providing the defendant with fair warning of the prohibited conduct." *Alvarez*, 755 F.2d at 841 n. 9. Thus, the district court properly denied Nabors's motion to dismiss because Alcohol, Tobacco, and Firearms agents are included in § 1114 by the enactment of 5 U.S.C. § 907(a). Moreover, because the only circuit decisions addressing the protection of Alcohol, Tobacco, and Firearms agents have held that those agents were covered by § 1114, Congress's failure to amend the statute to include those agents is properly viewed as an acquiescence in such an interpretation. *Blitz v. Donovan*, 740 F.2d 1241, 1245 (D.C.Cir.1984) (Congress is deemed to know the judicial gloss given to certain language and thus adopts it absent affirmative action to change the meaning).

█ Nabors next contends that the evidence is insufficient to convict him for using a firearm during and in relation to his possession of cocaine. He also contends that the district court should have granted his motion for acquittal because the evidence did not support a finding beyond a reasonable doubt that he possessed cocaine with the intent to distribute and that he used a firearm during a drug trafficking crime. For both of Nabors's claims, we apply essentially the same standard of review. The difference is that in our review of a motion for acquittal, we determine whether the evidence was sufficient to submit the case to the jury at the completion of the evidence for the United States. *See United States v. Gibson*, 675 F.2d 825, 829 (6th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). "In a criminal case the standard of review for claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Ellzey*, 874 F.2d

324, 327–328 (6th Cir.1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Nabors has failed to establish that reasonable minds could not have found him guilty beyond a reasonable doubt based on the evidence introduced.

█ Finally, we consider Nabors's argument that the district court erred in sentencing him to two consecutive five-year sentences under 18 U.S.C. § 924(c)(1) for his two convictions on separate violations of that statute. Nabors contends that the rule of lenity dictates that § 924(c)(1) not be read to allow one use of firearms to support two separate convictions and sentences.

Section 924(c)(1) provides, in pertinent part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for ten years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence, or drug trafficking crime in which the firearm was used or carried.

18 U.S.C. § 924(c)(1).

█ We agree with Nabors that § 924(c)(1) does not allow two sentences for a single violation of that statute. Here, however, two separate predicate offenses

for triggering § 924(c)(1) were charged and proven. Under the "fortress theory", adopted by us in *United States v. Henry*, we find that it reasonably appears that the weapons found in the apartment were in Nabors's actual and constructive possession and were used to facilitate and protect drug transactions. Consequently, those firearms are considered to have been used during and in relation to the drug trafficking offense of possession of cocaine with the intent to distribute. *See Henry*, 878 F.2d at 944.

In *Henry*, this Circuit vacated one of the two § 924(c)(1) convictions in that case because the government proved only that two uses of firearms were related to the same § 924(c)(1) predicate offense. Had the government adequately related the use of the firearm to a different offense, the Court would have affirmed the two § 924(c)(1) convictions. *Henry*, 878 F.2d at 945. Consequently, the panel in *Henry* explicitly declined to consider whether separate convictions under § 924(c)(1) permitted separate and discrete sentences. *Id.* at 944.

Nabors's two convictions under § 924(c)(1) do not each require the same proof of facts; the two predicate offenses are distinct and require proof of facts not required by the other predicate. Thus, no problem of multiplicity exists under *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Finding that Nabors was properly convicted for two different violations of § 924(c)(1), we now consider the issue left open by the Court in *Henry*.

Nabors argues that this Court should not allow multiple sentences under § 924(c)(1) because of dicta in *United States v. Torres*, 862 F.2d 1025, 1032 (3rd Cir.1988), that relative to multiple § 924(c)(1) offenses, "the law allows separate and discrete offenses to be charged, [but] does not permit separate and discrete offenses to be imposed...." In *Torres*, the government stipulated that only one sentence could be imposed for the multiple violations of § 924(c)(1). The Third Circuit's dicta was based on its implicit position that Congress

did not intend for double punishment under the enhanced sentence provisions. We disagree. There is nothing in the statute or the legislative history providing that separate convictions under § 924(c)(1) should not result in separate sentences under that provision. *See United States v. Woodward*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985) (analyzing legislative intent under question similar to issue presented by Nabors); *United States v. Duncan*, 850 F.2d 1104 (6th Cir.1988).

The Eleventh Circuit recently considered a similar sentencing argument concerning whether the conviction on separate predicate offenses to § 924(c)(1) in the same indictment resulted in the application of the subsequent or second conviction sentence enhancement provisions of the statute. Holding that the two convictions on the same indictment could trigger the subsequent sentence enhancement, the court reasoned that Congress also could have limited the effect of the statute to apply only to subsequent indictments or after a prison term was served on the first conviction under § 924(c)(1). *United States v. Rawlings*, 821 F.2d 1543 (11th Cir.), *reh'g denied*, 829 F.2d 1132 (11th Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). "To avoid such a result, a prosecutor could simply bring the two offenses in two separate indictments, thereby insuring that one of the convictions would occur later in time than the other.... We do not think Congress intended the enhanced penalty for a repeat offender of § 924(c) to hinge on the machinations of the prosecutor." *Id.* at 1546. Adopting Nabors's argument would result in separate indictments and, consequently, an increase in the number of criminal cases, to obtain the enhanced provisions of § 924(c)(1). We do not find the statute ambiguous on the availability of multiple sentences for separate violations of the statute.

While § 924(c)(1) is, at best, hard to follow in simple English, we concur with the reasoning in *Rawlings* that two distinct violations of the statute trigger the subsequent sentence enhancement provisions of § 924(c)(1). Thus, the commission of two

violations of § 924(c)(1) would result in a five-year consecutive sentence for the first conviction and a ten-year consecutive sentence for the second § 924(c)(1) conviction. However, because of the complexity of this issue, we find the district court's failure to sentence Nabors to a ten-year consecutive sentence for his second § 924(c)(1) conviction not clearly erroneous.

Therefore, we affirm Nabors's conviction and sentence.