25 F.3d 1052
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis WEST, Defendant-Appellant.
 No. 93-5775.
 United States Court of Appeals, Sixth Circuit.
 June 10, 1994.
 
 Before: KENNEDY, MILBURN and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Curtis A. West appeals his jury convictions for the attempted possession and possession of cocaine, and the aiding and abetting thereof, in violation of 21 U.S.C. Secs. 841(a)(1) & 846, and 18 U.S.C. Sec. 2, and for using or carrying a firearm during and in relation to a drug trafficking crime, and the aiding and abetting thereof, in violation of 18 U.S.C. Secs. 924(c)(1) & 2. On appeal, defendant argues that (1) the District Court erred in denying his motion to suppress evidence because, in executing a search, the police violated the knock-and-announce requirement of 18 U.S.C. Sec. 3109; (2) there was insufficient evidence to sustain the drug trafficking conviction; and (3) there was insufficient evidence to sustain the conviction for using a firearm in relation to the drug trafficking offense. For the reasons stated below, we affirm.
 
 I.
 
 2
 On April 7, 1992, Officer Clyde Harbin of the Shelby County, Tennessee, Sheriff's Department was present with his drug-sniffing dog at the Federal Express package facility in Memphis. His dog alerted on a package addressed to Beverly Smith at 4910 Brady Drive in Memphis. The sender was listed as Skylin Harris at 106 North Eucalyptus Street in Rialto, California. After obtaining a search warrant, authorities opened the package. The package contained several crumpled pages of newspaper from the March 11th Memphis Commercial Appeal and the March 29th edition of the Ontario, California, Daily Bulletin, and a small box. The box contained a bundle wrapped in fabric softener sheets and tape. The bundle contained 2977 grams of cocaine.
 
 
 3
 In the early afternoon of the same day, after replacing the narcotic with counterfeit or "sham" cocaine, Officer Harbin, disguised as a Federal Express delivery person, delivered the package to the townhouse located at 4910 Brady Drive. Bobby Baker answered the front door, said he had been waiting for the package, and signed for it in the name "Bobby Brown." Officer Harbin went to the Federal Express van and, accompanied by several officers who had been hiding in the van, returned to the house within four or five minutes. While at the van, Officer Harbin testified at trial, he noticed someone move a second-story window curtain and then move it back. Joint App. at 65-66.
 
 
 4
 At the front door, Officer Joe Eldridge knocked and shouted "police." The officers waited five or six seconds and then, hearing a "rumbling" noise inside the residence, forced their way in. Officer Eldridge testified that he believed the noise was someone attempting to flush the drugs down the toilet. As the officers entered the doorway, Officer Eldridge saw Baker leaving out the back door. Officers apprehended him down the street. Officer Eldridge also discovered an individual named Anthony Bell who was in the first-floor bathroom when they entered.
 
 
 5
 Officers discovered several items on the first floor including the delivered package, still unopened, with Baker's fingerprints on it; a loaded .38 caliber Smith & Wesson revolver in the couch with its serial number stamped out; two discarded Federal Express boxes in the kitchen, one with Baker's fingerprints, each containing fabric softener sheets and crumpled newspaper from Memphis and California; and a quantity of small plastic baggies in the downstairs closet. Upon entering the house, Officer Frederick Hughes proceeded upstairs where he discovered the defendant, partially dressed, in the master bedroom with a female companion. A search of the bedroom produced two loaded 12 gauge shotguns, one with the barrel sawed off, underneath the mattress; a .22 caliber pistol in the bedroom closet; several types of ammunition; and pages from the March 11th Memphis Commercial Appeal. In a closet just outside the master bedroom, officers discovered several new Federal Express boxes. Officers also searched a second bedroom on the second floor. They discovered several documents, with Baker's name on them, relating to the purchase of a vehicle and rental of a beeper. They also found a .45 caliber pistol.
 
 
 6
 Following the search, defendant told police that he lived in the house and that the guns were his. The manager of the townhouses, Beverly Mosley, testified that 4910 was leased to the defendant. Baker told police that he did not live there and was only visiting on that particular day. When asked for identification, however, Baker said it was upstairs in the house. Mosley also testified at trial that she had seen Baker there on several other occasions and that defendant had told her that Baker was his brother.
 
 
 7
 On April 14, 1992, a Federal Grand Jury for the Western District of Tennessee indicated defendant and Baker for aiding and abetting each other in the attempted possession and possession of three kilograms of cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) & 846, and 18 U.S.C. Sec. 2, and aiding and abetting each other in the use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Secs. 924(c)(1) & 2. The grand jury issued a Superseding Indictment on September 1, 1992, adding one count against defendant of possessing a sawed-off shotgun that was not registered to him in the National Firearms Registration and Transfer Record, in violation of 21 U.S.C. Sec. 5861(d). Defendant pled not guilty.
 
 
 8
 Defendant subsequently filed a motion to suppress the physical evidence seized at his residence and the statements he made to police. The motion was referred to a magistrate judge for report and recommendation. After an evidentiary hearing, the magistrate judge recommended denial of the motion, which the District Court so ordered.
 
 
 9
 A jury found defendant guilty on all three counts charged in the Superseding Indictment. The District Court sentenced defendant to 198 months imprisonment to be followed by five years supervised release. Defendant filed this timely appeal.
 
 II.
 
 10
 Defendant argues that the District Court erred by denying his motion to suppress evidence seized from defendant's residence on the ground that the police failed to knock, announce, and be refused admittance before forcibly entering the residence, in violation of 18 U.S.C. Sec. 3109.
 
 Section 3109 provides:
 
 11
 Sec. 3109. Breaking doors or windows for entry or exit
 
 
 12
 [An] officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
 
 
 13
 18 U.S.C. Sec. 3109. Defendant argues first that the officers' failure to give notice of their purpose warrants suppression of the evidence. Second, defendant argues for suppression on the ground that, even if the police announced their purpose, they failed to wait long enough to infer that their admittance was denied.
 
 
 14
 A violation of Sec. 3109 requires suppression of the evidence seized. Miller v. United States, 357 U.S. 301, 313-314 (1958). However, "[t]he burden of making an express announcement is certainly slight." Miller, 357 U.S. at 309. This burden is met when "the facts known to officers would justify them in being virtually certain that the [defendant] already knows their purpose so that an announcement would be a useless gesture." Miller, 357 U.S. at 310. Moreover, strict adherence to Sec. 3109 is excused "where exigent circumstances have existed which render strict compliance inappropriate and imprudent." United States v. Nabors, 901 F.2d 1351, 1354 (6th Cir.), cert. denied, 498 U.S. 871 (1990). Whether the circumstances justified non-compliance is a highly factual question over which we accord great deference to the district court.
 
 
 15
 In this case, the officers announced their authority but failed to expressly announce their purpose before breaking the door down. Thus, arguably, the officers failed to comply with Sec. 3109.[1] Under exigent circumstances, however, the officers' fear of evidence destruction excuses their failure to announce their purpose.[2] See, e.g., United States v. Spinelli, 848 F.2d 26 (2d Cir.1988), cited with approval in Nabors, 901 F.2d at 1354. Here, the object of the search was cocaine, a substance easily disposed of, and police believed they heard someone attempting to flush the evidence down the toilet. Indeed, one suspect was in the bathroom when this occurred. Under these circumstances, it would have been imprudent to follow the procedure outlined in Sec. 3109 and the officers' failure to do so does not warrant reversal.
 
 
 16
 For similar reasons, we hold that the officers were justified in waiting no more than five or six seconds before entering. The ease with which drugs can be destroyed and the noises officers heard justifies the officers' conclusion that they had, in effect, been refused admittance. See United States v. Bonner, 874 F.2d 822, 824 (D.C.Cir.1989) (holding forced entry justified in part because suspects were known to be in house and drugs are easily destroyed). Second, the large amount of cocaine sent to defendant's house, estimated to have a street value of $600,000.00, indicated a substantial drug trafficking operation. A house of drug dealers poses special dangers. As one court observed:
 
 
 17
 Those within might reasonably be thought to be unusually attuned to a law-enforcement knock at the door, and ready to respond promptly in one form or another. As common sense, and bitter experience, would suggest, the law has "uniformly ... recognized that substantial dealers in narcotics possess firearms and that such weapons are as much tools of the trade as more commonly recognized drug paraphernalia." United States v. Payne, 805 F.2d 1062, 1065 (D.C.Cir.1986) [other citations omitted]. Once police officers seeking to enter a drug traffickers' enclave have announced their identity and authority, they stand before the door blind and vulnerable. In such a danger-fraught situation, the officers may quite reasonably infer refusal more readily than under other circumstances.
 
 
 18
 Bonner, 874 F.2d at 824. In this case, police were not required to wait longer before entering the house. The District Court's denial of defendant's motion to suppress was not erroneous.
 
 III.
 
 19
 Defendant next challenges the sufficiency of the evidence for his jury conviction for the attempted possession and possession of cocaine with intent to distribute, and the aiding and abetting thereof, in violation of 21 U.S.C. Secs. 841(a)(1) and 846, and 18 U.S.C. Sec. 2.
 
 
 20
 Before reviewing the merits of defendant's claim, we address an initial question raised by the United States. The United States contends that defendant forfeited his right to challenge the sufficiency of the evidence by failing to move for a judgment of acquittal at trial. At the close of the United States' proofs, counsel for Baker, defendant's co-defendant, said "I move [for judgment of acquittal] on behalf of Mr. Bobby Baker, and I think counsel for Mr. Curtis West joins in for the record." Trial Tr. at 389. Counsel for Baker renewed his motion at the close of defendant's case: "I think counsel and I do renew our motion for a directed verdict at this time." Trial Tr. at 463. Defendant's counsel remained silent at these times, which the United States asserts constituted a failure to join the motion. We conclude, however, that defendant acquiesced by his silence in Baker's counsel's representations and therefore we shall review defendant's challenge to the sufficiency of the evidence.
 
 
 21
 "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.' " United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). The standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Ellzey, 874 F.2d 324, 327-28 (6th Cir.1989). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." Vannerson, 786 F.2d at 225.
 
 
 22
 Defendant argues that although the evidence establishes that Baker was a joint occupant of the house and that Baker handled the package, nothing in the record indicates that defendant possessed, controlled, or even knew of the package or any other incriminating evidence. At most, defendant was merely present in the house when Baker, independent of defendant, engaged in drug trafficking.
 
 
 23
 Count 1 of the indictment charged defendant with the attempted possession and possession of cocaine with intent to distribute, and the aiding and abetting thereof, in violation of 21 U.S.C. Secs. 841(a)(1) & 846, and 18 U.S.C. Sec. 2. Section 841(a)(1) prohibits the knowing or intentional possession of cocaine with intent to distribute. 21 U.S.C. Sec. 841(a)(1). To prove attempt, the United States must establish "(1) the intent to engage in the criminal activity, and (2) the commission of one or more overt acts towards the commission of the substantive offense." United States v. Reeves, 794 F.2d 1101, 1104 (6th Cir.), cert. denied, 479 U.S. 963 (1986). A defendant aids or abets the commission of a crime if he associates himself in some way with the venture such that his participation is intended to bring about the crime or make it succeed. United States v. Clark, 928 F.2d 733, 736 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991).
 
 
 24
 The quantity of cocaine seized by the police was almost three kilograms. Such a large quantity gives rise to an inference that it was intended for distribution. See United States v. Phibbs, 999 F.2d 1053, 1065-66 (6th Cir.1993), petition for cert. filed, 62 U.S.L.W. 3493 (U.S. Jan. 03, 1994) (No. 93-1093) (holding that intent to distribute may be inferred from one kilogram of cocaine).
 
 
 25
 The more difficult question is the linkage of the cocaine to defendant. Baker had been expecting the package and accepted it when delivered. Joint App. at 64-65. The house, however, was leased to defendant. Defendant permitted Baker to live there, and told the landlord that Baker was his brother. The officers discovered other used Federal Express boxes in the house that contained crumpled newspaper and fabric softener sheets. That newspaper was from papers in Memphis and California, as was that found in the drug package. Officer Harbin testified that, in his experience, drug dealers often shipped drugs by Federal Express and that fabric softener sheets are often used to disguise the scent of the drugs. Joint App. at 68-69. A quantity of small plastic bags was also found in the downstairs closet. This evidence indicates that defendant's house was used to distribute cocaine.
 
 
 26
 Additionally, police discovered three guns in defendant's bedroom: two loaded 12 gauge shotguns, one with the barrel sawed off, underneath the mattress, and a .22 caliber pistol in the bedroom closet. They also found a box of 12 gauge shotgun shells, .45 caliber shells, and .22 caliber shells in the bedroom. In a closet immediately outside defendant's bedroom, police found several new Federal Express boxes. The total circumstantial evidence was sufficient for the jury to infer that the defendant, the primary occupant of the house, knew of and participated in the drug trafficking activity.
 
 
 27
 Finally, and perhaps most inculpatory, the newspaper found in defendant's bedroom connects him to the cocaine-containing package. The package contained pages from section A, B, and D of the March 11th Memphis Commercial Appeal. In defendant's bedroom, where defendant was at the time of the search, police discovered section C from the March 11th Memphis Appeal. No other sections from that newspaper were discovered in the bedroom. A reasonable inference is that the package, which eventually contained the cocaine, originated with defendant. Viewing the evidence as a whole and in the light most favorable to the United States, a rational trier of fact could find that defendant directly participated in the transaction involving the cocaine package.
 
 IV.
 
 28
 Finally, defendant challenges the sufficiency of the evidence with respect to his count 2 conviction for the use and carry of a firearm, and the aiding and abetting thereof, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Secs. 924(c)(1) & 2.
 
 Section 924(c) provides in part:
 
 29
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.
 
 
 30
 18 U.S.C. Sec. 924(c)(1). The terms uses and carries "should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.), cert. denied, 493 U.S. 899 (1989). This Court has adopted a "fortress theory" for determining when a firearm is used "during and in relation to" a drug trafficking crime. Accordingly,
 
 
 31
 if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used "during and in relation to" a drug trafficking crime.
 
 
 32
 United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989). Nonetheless, "[t]he phrase 'in relation to' ... clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." Smith v. United States, 113 S.Ct. 2050, 2059 (1993). Mere possession of a firearm, therefore, when the firearm's presence is entirely unrelated to the crime, does not merit conviction under Sec. 924(c)(1). But "[e]ven if a firearm remains hidden throughout a crime, its concealed presence may have been in relation to the crime if it facilitated the crime by emboldening the defendant, giving him the security and confidence to undertake the criminal act." United States v. Brown, 915 F.2d 219, 224 (6th Cir.1990).
 
 
 33
 Turning to this case, we find sufficient evidence in the record to convict defendant on the firearm charge. The United States adduced evidence that drug trafficking was occurring at 4910 Brady Drive. The police also discovered loaded guns, which defendant admits owning, in defendant's bedroom. The same room contained the missing section from the newspaper used to package the cocaine. The jury could reasonably conclude beyond a reasonable doubt that the firearms were used during and in relation to the drug trafficking, and that defendant directly, or by aiding and abetting, used or carried the firearms during and in relation to the drug trafficking offense. See United States v. Warner, 10 F.3d 1236, 1239 (6th Cir.1993) (affirming that gun on living room sofa of drug trafficking house was used in relation to drug trafficking); United States v. Lloyd, 10 F.3d 1197, 1212 (1993) (concluding that "a loaded weapon in the hallway of [a drug trafficking] residence is without question a weapon that a jury could reasonably conclude was used during and in relation to a drug trafficking crime.").
 
 V.
 
 34
 For the reasons stated above, defendant's convictions are AFFIRMED.
 
 
 
 [1]
 A failure to make an express announcement of purpose need not violate Sec. 3109 if the officers have reason to believe the occupants of the house already know the officers' purpose. See Miller, 357 U.S. at 310; United States v. One Parcel of Real Property, 873 F.2d 7, 9-10 (1st Cir.), cert. denied, 493 U.S. 891 (1989). We do not decide whether such circumstances existed here since, as we conclude below, exigent circumstances excused compliance with the statute
 
 
 [2]
 We are concerned here only with compliance with Sec. 3109 when officers execute a valid search warrant. We do not suggest that the circumstances excusing full compliance with Sec. 3109 would necessarily constitute exigent circumstances under a Fourth Amendment analysis