UNITED STATES of America,
Plaintiff–Appellee,

v.

Wright PALMER, Defendant–
Appellant.

No. 99–5745.

United States Court of Appeals,
Sixth Circuit.

Oct. 2, 2001.

Before JONES, BOGGS, and SILER, Circuit Judges.

PER CURIAM.

Defendant–Appellant Wright Palmer appeals his conviction for possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (1998) and possessing ammunition as a convicted felon in violation of 18 U.S.C. § 922(g) (1998). He argues that the district court erred by denying his motion to suppress evidence, that his motion for acquittal or new trial should have been granted based on the presence of allegedly false statements in the search warrant affidavit, that the evidence was insufficient to support his conviction, and that the district court erred in

its application of the United States Sentencing Guidelines. For the reasons that follow, we affirm the district court.

## I.

### A. Procedural History

Defendant–Appellant Wright Palmer was indicted on one count of possessing with the intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and one count of possessing ammunition after having been convicted of a felony in violation of 18 U.S.C. § 922(g).

Prior to the trial, Palmer filed a motion to suppress evidence that was seized from his residence when the Federal Bureau of Investigation ("FBI") executed a search warrant on October 17, 1998. Palmer argued that the evidence should be suppressed because agents failed to comply with the "knock and announce" rule set forth in 18 U.S.C. § 3109 (2001). The district court held a hearing and denied the motion.

After the trial, Palmer filed a motion for judgment of acquittal. This motion was based on the argument that false statements were included in the affidavit on which the search warrant was based. The district court denied the motion.

The district court held a sentencing hearing and sentenced Palmer to sixty months of imprisonment, to run concurrently, on each count of the indictment. The court overruled an objection by Palmer to the PSR's failure to group his offenses for sentencing purposes under U.S.S.G. § 3D1.2. The court also overruled his objection to an enhancement for obstruction of justice with respect to Court 1 (§ 841(a)(1)), but sustained the same objection with respect to Count 2 (§ 922(g)).

### B. Substantive Facts

In October 1998, FBI Special Agent James T. Adams conducted a narcotics investigation regarding Wright Palmer because Adams had information from a paid confidential informant named Sheila Bernil that Palmer was selling crack cocaine.[1] With Bernil's cooperation, the FBI and the Brownsville Police Department made plans to make a purchase of crack cocaine from the defendant at his residence in Brownsville, Tennessee.

On October 7, 1998, Bernil was provided with a wire transmitter that resembled a pager, and her car was equipped with a video camera that pointed outward from the windshield. Acting at the direction of the FBI, she traveled to a pay phone and called Palmer. During the recorded conversation Bernil made arrangements to go to Palmer's residence. However, the conversation did not explicitly refer to drugs.[2]

Law enforcement agents searched Bernil and her car for drugs and followed Bernil to Palmer's residence. At the residence, Palmer asked Bernil if he could "pat her down." Palmer found the pager,

---

1. Bernil testified at trial that prior to the drug evidence purchase on October 7, 1998, she had been obtaining crack cocaine from Palmer.

2. The transcript of the telephone conversation is reproduced in the district court's order denying Palmer's motion for acquittal:
   WP [Wright Palmer]: Hello. SB [Shelia Bernil]: Wright? WP: Yeah, this is me. SB: This Sheila. Hey, baby. WP: What's up, man? SB: What you doin'? WP: Chillin', man. What's up with you? SB: I just got in town. WP: Where you at? SB: I'm at the WOW at a phone booth. I want to do ... WP: Naw, look here. Ah, check this out. You by yourself? SB: Yeah. WP: Just come on over here then. SB: Okay. WP: We ain't gonna talk on no phone. Just come over here now. SB: Okay. WP: You at the WOW by yourself. SB: Okay. WP: Com[e] on over here and give me some. SB: I hear ya'. (J.A. at 54–55.)

stated that it was not working, and put it in Bernil's car.

Concerned for Bernil's safety, agents sent an officer to the house. When the agents arrived, Bernil left the residence, acting as if she did not know the officers. Palmer was not arrested. Bernil then met with law enforcement agents and provided them with the crack cocaine that she claimed to have purchased from Palmer.

Bernil testified that once she was in the residence she told Palmer to "fix her up a package," and Palmer provided her with the crack cocaine. She also said that there was additional crack cocaine in the residence.

On October 17, 1998, at approximately 6:30 a.m., the FBI executed a federal search warrant at Palmer's residence. At the time the search warrant was executed, Walter Merriweather, Palmer's uncle, was at Palmer's home. Merriweather testified that he heard a knock and then a mumble and what he thought were kicks to the door. Although he testified that he was sitting fifteen feet from the door, he claimed to have had no idea that the FBI was outside the home. According to Merriweather, a few seconds elapsed between when he heard a knock and when he heard the door being rammed in. He further testified that the night before the warrant was executed he was tired and drank approximately two quarts of beer until one in the morning, at which point he fell asleep.

The agents claim to have announced, "FBI Search Warrant" after knocking on the defendant's front door. Agent Adams testified that the television and lights were on in the residence and that an individual (later identified as Merriweather) was in the residence sitting in a chair approximately 8 feet from the front door.

According to Adams, after he knocked on the door he looked at his watch to make sure that he gave anyone inside ample time to come to the door. After waiting approximately 15–20 seconds. Adams and other law enforcement agents began to make a forced entry into the residence. They claim to have thought the occupants of the house were not going to open the door. Agents attempted to ram the door, but it would not open. It took approximately 30–40 seconds before agents were able to open up the door. Palmer, who was in the bathroom, was detained, and the residence was searched.

In the residence, agents recovered a box of .38–caliber ammunition containing 45 rounds. An FBI fingerprint expert testified that Palmer's fingerprints were on the plastic sleeve in the box. Agents also recovered a set of digital scales and a police scanner tuned to the frequency of the Brownsville Police Department. Palmer's wife, Lashunda Palmer, testified that she used the scales to weigh her food because of a kidney disease. The government notes that the scales were recovered in a bedroom, not the kitchen. Agents also found a plastic baggie that contained crack cocaine residue in a kitchen trash can.

A few days later, agents went back to Palmer's residence to return prescription medication recovered from the house, and they spoke with Palmer about the ammunition. Palmer told Agent Adams that he had had his mother's gun at his house but that it had been stolen and he had kept the ammunition. Palmer was not arrested until early December.

During the trial, Palmer testified on his own behalf. He acknowledged his status as a convicted felon and said that he possessed the ammunition prior to becoming a convicted felon but that he had since forgotten it was in the house. In addition, he denied selling crack cocaine to Bernil. Palmer claimed that he previously had an affair with Bernil and was concerned that Bernil was going to tell his wife. Accord-

ing to Palmer, this was why he placed Bernil's pager in her car. Palmer stated that he believed the reason Bernil was visiting him was to have sex.

### III.

Palmer argues that the evidence seized in the search of his residence should have been suppressed because the officers failed to execute the search warrant in compliance with 18 U.S.C. § 3109. "When reviewing a motion to suppress, this court reviews the district court's factual findings under a clearly erroneous standard, and its conclusions of law are reviewed *de novo.*" *United States v. Latouf,* 132 F.3d 320, 330 (6th Cir.1997).

■ Section 3109 is the codification of the common law "knock and announce rule" and provides, in pertinent part:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (2001). The purpose of the "knock and announce" rule is to restrict the authority of the government to intrude upon the privacy of its citizens, "to respect the sanctity of a person's home by affording notice to those inside so that they may open the door peaceably and without the needless destruction of property," and to protect officers who might be mistaken for intruders. *United States v. Spikes,* 158 F.3d 913, 925 (6th Cir.1998), *cert. denied,* 525 U.S. 1086, 119 S.Ct. 836, 142 L.Ed.2d 692 (1999). If evidence is obtained in violation of the knock and announce statute, that evidence must be suppressed.[3] *United States v. Nabors,* 901 F.2d 1351, 1354 (6th Cir.) *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990).

■ "[L]aw enforcement officers may not take lightly the requirement of § 3109 that bursting into [residences] is permitted only after notice of the officers' authority and purpose and they are refused admittance...." *Id.* at 1354–55. However, "[t]he phrase 'refused admittance' is not limited to an affirmative refusal, but encompasses circumstances that constitute constructive or reasonably inferred refusal." *United States v. McDowell,* No. 93–5960, 1994 WL 118073, 1994 U.S.App. LEXIS 6677, at *7 (6th Cir. Apr. 5, 1994) (unpublished) (citing *United States v. Knapp,* 1 F.3d 1026, 1030 (10th Cir.1993) and *United States v. Bonner,* 874 F.2d 822, 824 (D.C.Cir.1989)).

■ In this case the district court found that the agents waited 15–20 seconds from the time they announced their presence until they made a forced entry. This Court has held:

> [W]hen officers announce their presence and wait approximately fifteen seconds before making a forced entry ... the occupants have sufficient time to respond to the officers' knock-and-announcement. The occupants' failure to respond may be taken as a refusal of admittance, and the officers have complied with the terms of § 3109 in making their forced entry.

*Id.* at 832; *see also United States v. Gatewood,* 60 F.3d 248, 250 (6th Cir.1995) (holding that lapse of 10 seconds, or possibly 10–15 seconds, was reasonable); *United States v. Ciammitti,* 720 F.2d 927, 932–34 (6th Cir.1983) (finding that under the

---

**3.** The Sixth Circuit has found "exigent circumstances" sufficient to excuse strict compliance with § 3109 when officers act to preserve narcotics evidence or the subject of the search is believed to be armed. *United States v. Nabors,* 901 F.2d 1351, 1354–55 (6th Cir. 1990). The government does not assert such an exception here.

circumstances agents could reasonably assume that they were being denied admittance after waiting 15–30 seconds). Other circuits have reached similar conclusions. *See e.g., Knapp,* 1 F.3d at 1030–31 (approving of a 10–12 second interval); *Bonner,* 874 F.2d at 826 (approving an 11–12 second interval); *United States v. Garcia,* 983 F.2d 1160, 1168 (1st Cir.1993) (holding that an interval of "approximately 10 seconds" is reasonable under § 3109 where the occupants were believed to possess cocaine, "a substance that is easily and quickly hidden or destroyed"). Consistent with this Court's past practice, however, we expressly decline to set forth specific parameters defining how long agents must wait before they make a forced entry. *See Spikes,* 158 F.3d at 926 (declining to create bright-line rule regarding amount of time officers must wait after knocking and announcing).

It is necessary to "carefully scrutinize[ ]" cases in which agents make a "forced entry seconds after announcing their authority and purpose" to determine if the officers have complied with the statute. *Nabors,* 901 F.2d at 1355. In this case the district court's determination that the agents could reasonably conclude after waiting for 15–20 seconds that they were being refused admittance is bolstered by Agent Adams' testimony that lights and a television were on in the house and that he could see Mr. Merriweather sitting about eight to ten feet away from the door, but Merriweather made no move to respond to the agents' knock and announcement.

Although Palmer points to conflicting evidence concerning the length of the law enforcement agents' wait, we cannot hold that the district court was clearly erroneous in finding that the agents waited 15–20 seconds before making a forced entry. As

we held in *United States v. Herod,* No. 97–5825, 1999 WL 17639, 1999 U.S.App. LEXIS 14113, at *12–13 (6th Cir. Jan. 6, 1999) (unpublished), the trial court is due deference as the finder of fact and could reasonably have believed that the police testimony concerning the circumstances of the warrant's execution was more credible than that of the defense witnesses. The district court in the case at bar clearly reached that conclusion and said,

> Given the fact that Mr. Merriweather had been drinking heavily—two quarts of beer seems like a lot of beer to me. Also, to be drinking beer at 6 o'clock in the morning seems to have some bearing on Mr. Merriweather's ability to perceive, coupled with the fact that he had been asleep. It's my judgment that Mr. Adams' version of the time is more accurate than Mr. Merriweather's version of the time.

(J.A. at 179). Because the district court relied on these circumstances and on its conclusion that the government's testimony was more credible than the defendant's testimony, the court's factual finding that the agents waited a reasonable amount of time after being refused entry is not clearly erroneous.[4]

### IV.

Palmer alleges that there were false statements in the search warrant affidavit and therefore argues that the evidence obtained with the warrant and introduced at trial should have been excluded. Palmer presented this argument to the district court in a motion for acquittal or a new trial that he submitted after the trial. In his brief to this Court he refers to this motion as a motion to suppress. Our disposition of this matter renders unnecessary

---

**4.** For the same reasons, we cannot conclude that the district court clearly erred when it found that the agents did knock and properly identify themselves when they arrived at Palmer's residence.

any discussion of questions concerning the procedural posture of this issue.

▉ Under certain circumstances a defendant can obtain a hearing to challenge the veracity of statements made in an affidavit that supported a search warrant. *See Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). However, "[a] defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990). Under *Franks,* a defendant must satisfy a two-part test. *See id.; United States v. Hill,* 142 F.3d 305, 310 (6th Cir.1998). First, he must make a "substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." *Hill,* 142 F.3d at 310. The defendant's allegations should be supported by an offer of proof; he "should provide supporting affidavits or explain their absence." *Bennett,* 905 F.2d at 934. "Allegations of negligence or innocent mistake are insufficient." *Franks,* 438 U.S. at 171, 98 S.Ct. 2674. Second, if he satisfies the requirements of the first prong, "then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause." *Bennett,* 905 F.2d at 934. We will review *de novo* the district court's denial of a *Franks* hearing. *See United States v. Caldwell,* No. 99–5088, 2000 WL 875694, 2000 U.S.App. LEXIS 14513, at \*10 (6th Cir. June 19, 2000) (unpublished) (citing *United States v. Ritter,* 752 F.2d 435, 439 (9th Cir.1985)).[5]

▉ Specifically, Palmer challenges the portion of the affidavit that states:

the CI [confidential informant], contacted Wright Palmer via Telephone and requested he/she be allowed to purchase crack cocaine from him. Wright Palmer told the CI to come to his residence alone and they could conduct a transaction. This call was recorded.

(J.A. at 66.)[6] The district court concluded that Palmer failed to show that the statements were deliberately false or that there was reckless disregard for the truth and that even if that showing had been made, the challenged statements were not essential to the magistrate's finding of probable cause; thus, Palmer failed to satisfy the requirements of *Franks.* We agree.

In the case at bar, the affiant, Agent Adams, did concede during his trial testimony that a portion of the affidavit was not correct. (J.A. at 53–56.) During the telephone conversation, the confidential informant did not explicitly request to buy drugs. The district court summarized the conversation:

The confidential informant had told law enforcement officers that she could arrange to purchase drugs from Palmer and she called him to set up an appointment for that purpose. When she told Mr. Palmer "I want to do . . .", he interrupted her, asked her if she was alone, and then invited her to his house saying, "We ain't gonna talk on no phone. Just come over here now."

---

5. *But see United States v. Fields,* No. 98–5798, 2000 WL 1140557, 2000 U.S.App. LEXIS 19206, at \*9, n. 1 (6th Cir. Aug. 4, 2000) (unpublished) (noting disagreement among the circuits as to the proper standard of review). As in *Fields* we will assume *de novo* review, and because "the more exacting de novo standard of review is satisfied in the case at bar . . . it is unnecessary for us to further discuss the issue." *Id.*

6. The search warrant was not entered into evidence, but testimony concerning the warrant and affidavit was given at trial. And, on March 16, 2000, the district court granted a motion to supplement the record to include the application and affidavit for the search warrant.

(J.A. at 56.) Agent Adams testified that at the time of the call he could only hear Bernil's side of the conversation and that he did not listen to the tape before submitting the affidavit. Adams testified that he based the statement in his affidavit on what he did hear and on conversations with other officers. Moreover, as the district court pointed out, Bernil had told the agents that she could arrange a transaction with Palmer and agreed to call him for that purpose.

Palmer has failed to meet his burden on the first issue. He did not make a preliminary showing that the affidavit was deliberately false or demonstrated a reckless disregard for the truth. *Franks* specifically states that "[a]llegations of negligence or innocent mistake are insufficient." 438 U.S. at 171, 98 S.Ct. 2674. Adams may have been negligent by not listening to the tape before submitting the affidavit, but that is insufficient.

■ In addition, even if Palmer were able to satisfy the first prong of the *Franks* test, he must also satisfy the second prong, which he fails to do. Without the challenged statements, the affidavit still says that the informant drove to Palmer's house and that Palmer sold cocaine to the informant inside Palmer's house. (J.A. at 66.) Therefore, even without the statement that the confidential informant discussed buying drugs from Palmer over the telephone, the information in the affidavit about the informant's actual purchase of drugs from Palmer would have been sufficient to establish probable cause. Therefore, we affirm the district court on this issue.[7]

### V.

Palmer claims that the district court improperly enhanced Palmer's sentence under United States Sentencing Guideline § 3C1.1 for obstruction of justice with respect to the cocaine offense.[8] U.S. Sentencing Guidelines Manual § 3C1.1 (1998). "This Court reviews the district court's factual findings under a clearly erroneous standard," and "[t]he district court's determination of whether the facts constitute an obstruction of justice is a mixed question of law and fact which this Court reviews de novo." *United States v. Mise*, 240 F.3d 527, 530–31 (6th Cir.2001).

In this case the obstruction of justice enhancement was based on the district court's conclusion that Palmer committed perjury when he testified at trial. *See* U.S. Sentencing Guidelines Manual § 3C1.1, cmt. n. 4 (1998) (listing committing perjury as an example of conduct to which the enhancement applies). Palmer argues that the district court erred because it did not make particular findings that Palmer gave false testimony under oath concerning a material matter with the willful intent to deceive rather than as a result of confusion or mistake.

■ Palmer is correct that a district court may not base a finding of perjury

---

7. Palmer also complains in his reply brief that the affidavit did not mention that Bernil had a psychiatric condition (manic depression) or that Bernil had had sexual relations with Palmer in the past. But, Agent Adams testified that he did not even know about their past sexual relationship until after the warrant was obtained, in fact, not until one week prior to the trial. (J.A. at 207–08.) And, Bernil testified that even she did not know that she had this psychiatric disorder until after October 7, 1998 (the date of the drug

buy). (J.A. at 226–27.) So, any argument that Agent Adams did not put this information in the affidavit because of a reckless disregard for the truth would fail.

8. The presentence report also suggested an obstruction of justice enhancement with respect to Count 2 (felon in possession of ammunition), but the district court, sustaining Palmer's objection, rejected this enhancement. (J.A. at 22.)

simply upon the fact that the jury returned a verdict of guilty after the defendant testified. *See United States v. Nash*, 175 F.3d 429, 438 (6th Cir.1999). Rather, if a defendant objects to a § 3C1.1 enhancement that is based on his testimony, "the district court must specify what statements the defendant made that were perjurious." *Id.* (quoting *United States v. Maliszewski*, 161 F.3d 992, 1030 (6th Cir. 1998)). In addition, the court is required to "review the evidence and make independent findings necessary to establish" the perjury, which is defined as giving false "testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94–95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993); *see also United States v. Mise*, 240 F.3d 527, 531 (6th Cir.2001).

In the case at bar, the district court reviewed the evidence and specifically found that Palmer's testimony that he thought Bernil was coming over to his residence to engage in sexual relations and not to conduct a drug transaction was false. The court further found that Palmer gave this untruthful testimony in an effort to convince the jury that he did not sell crack cocaine. (J.A. at 306–07.) In sum, the district court made its own findings and did not merely rely on the jury's ultimate conclusion to determine that an enhancement for obstruction of justice was warranted.

Palmer has not provided any evidence, or made any argument, to demonstrate that the district court's finding was clearly erroneous. And, given the other witnesses' testimony concerning the drug buy, we conclude that the court's findings were not clearly erroneous. Moreover, once the district court made this determination, the obstruction of justice enhancement was appropriate. *See Dunnigan* 507 U.S. at 94–

95, 113 S.Ct. 1111. Therefore, we affirm the district court on this issue.

To the extent that Palmer is also arguing that his counts of conviction were related and should have been grouped for sentencing purposes, we have considered this argument and find it to be without merit.

Finally, we have reviewed the record, keeping in mind that at this stage the Court may not judge the credibility of witnesses who testified at trial, *see United States v. Talley*, 164 F.3d 989, 996 (6th Cir.1999), and we conclude that the evidence presented at trial with respect to both counts of conviction was sufficient so that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

For the foregoing reasons we AFFIRM the district court.