**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John A. HILL, Defendant–Appellant.**

No. 96–3843.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 6, 1998.

Decided April 16, 1998.

---

Joseph P. Schmitz, Asst. U.S. Atty. (argued and briefed), Office of U.S. Atty., Cleveland, OH, for Plaintiff–Appellee.

John J. Gideon (argued and briefed), Columbus, OH, John Hill, Leavenworth, KS, for Defendant–Appellant.

Before: CONTIE, BATCHELDER, and MOORE, Circuit Judges.

## OPINION

CONTIE, Circuit Judge.

Defendant-appellant, John A. Hill, appeals his conviction and sentence for violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1).

## I.

In April 1995, according to information provided to the Caribbean Gang Task Force, a confidential informant stated that defendant was involved in drug trafficking, was known on the street as "Smoke," and drove an old blue Chevrolet in transporting drugs. During the course of the investigation, defendant was observed in a blue 1983 Chevrolet registered to his sister, Carmella M. Hill. The confidential informant stated that defendant was known to regularly traffic drugs at a house on East 61st Street in Cleveland, Ohio. Cleveland Police detective James Muhic conducted periodic surveillance of defendant's residence over the three months prior to execution of a search warrant. The surveillance revealed that defendant departed from his residence at 3836 East 149th Street and went to the house on East 61st Street, which was a location with sporadically heavy vehicular traffic. Individuals would arrive at East 61st Street, would be met by defendant or other persons, and would stay for only a few moments before leaving, which was activity indicative of drug trafficking.

On July 17, 1995, the police decided to check the trash in front of defendant's residence for evidence of drug trafficking. The police removed two garbage bags from the tree lawn, and after Muhic examined their contents, he found a small plastic bag which contained marijuana residue. He obtained an initial search warrant based on this evidence, but never executed this warrant as he was unsure whether he had sufficient probable cause. On July 24, 1995, two more garbage bags were taken from the tree lawn of defendant's residence. In one bag the police found small plastic bags with the corners cut out, an indication of packaging "eight balls," one-eighth of an ounce of "crack." They also removed razor blades with cocaine residue, a plastic bag with cocaine residue, and correspondence addressed to defendant. The confidential informant had indicated that defendant kept drugs, money, and weapons on the third floor and in the basement of his residence.

On July 24, 1995, a Cuyahoga County Common Pleas judge authorized a second search warrant for defendant's premises and car. At approximately 1:30 p.m., defendant was observed in a 1983 Chevrolet, traveling at a high rate of speed. He was stopped, searched, and presented with copies of search warrants for the vehicle and for his residence. After being detained, he gave keys to the officers for access to his residence. At approximately 2:43 p.m., officers and agents of the Caribbean Drug Task Force executed the search warrant.

Defendant was taken to his residence where he directed officers to the bedroom of his sister Carmella. He indicated this room was his bedroom, but the only clothing found in the room was women's clothing. The third floor attic room was padlocked, but officers gained access with a key found on defendant's key ring. The police seized from the attic bedroom approximately 78 grams of crack cocaine base, approximately 4.4 kilograms of marijuana, a bulletproof vest, an Acculab scale with cocaine residue, a beaker containing cocaine residue, a blender containing marijuana residue, and other drug paraphernalia. They also seized numerous receipts and records establishing the identity of defendant with the residence and a loaded 9mm semi-automatic pistol and a box of 9mm ammunition rounds. They recovered a pager and $1,908 from defendant's person.

Defendant maintained that the drugs were not his and that he had been in Detroit prior to the execution of the warrant from July 22nd to 23rd and did not return to Cleveland until early in the morning of July 24, 1995. He alleged that others had access to his house, including the informant who defendant believed had set him up in order to arrange for a plea bargain in his own case. Defendant also blamed the arresting officer, Officer Muhic, for setting him up because Muhic had previously arrested defendant on a murder charge and allegedly had been angry when the murder charge was subsequently dropped.

On August 16, 1995, a federal grand jury returned a three-count indictment against defendant. In Count One, he was charged with knowingly possessing with intent to distribute approximately 78.47 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). In Count Two, he was charged with knowingly

possessing with intent to distribute approximately 4.4 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). In Count Three, he was charged with unlawfully possessing 57 rounds of 9mm ammunition in violation of 18 U.S.C. § 922(g)(1).

On September 13, 1995, the government filed an information pursuant to the provisions of 21 U.S.C. § 851(a) to give notice of its intent to rely on the sentencing provisions of 21 U.S.C. § 841(b)(1)(A) to seek an enhanced sentence because of two prior felony drug convictions—one in which defendant was convicted of drug abuse on November 27, 1989 in violation of Ohio Rev.Code § 2925.11, and the second in which defendant was convicted of trafficking cocaine on November 27, 1989 in violation of Ohio Rev. Code § 2925.03.

Defendant made a motion to suppress the items seized from his residence and car, claiming that the search warrant was invalid because the supporting affidavit provided by Detective Muhic contained false statements. The district court denied this motion.

The case proceeded to trial on March 18, 1996. The drug charges set forth in Counts One and Two of the indictment were submitted to the jury on March 22, 1996, and the jury returned verdicts of guilty on both these counts. Pursuant to a prior agreement, the district court, sitting as the trier of fact on Count Three, found defendant guilty of Count Three.

At sentencing, the district court, as mandated by the penalty provisions of 21 U.S.C. §–841(b)(1)(A)(viii), sentenced defendant to a term of life imprisonment on Count One. The district court imposed ten-year concurrent sentences for his convictions on Counts Two and Three. Defendant filed a timely notice of appeal.

## II.

Defendant raises for the first time on appeal an ineffective assistance of counsel claim, which was never presented to the district court. Defendant argues that his trial counsel's revelations about a prior gun conviction and murder charge constituted ineffective assistance of counsel, requiring reversal of his conviction.

It has been clearly established that an appellate court generally "will not review an ineffective assistance of counsel claim that is raised for the first time on appeal." *United States v. Straughter*, 950 F.2d 1223, 1234 (6th Cir.1991), *cert. denied*, 502 U.S. 1119, 112 S.Ct. 1238, 117 L.Ed.2d 471 (1992). Such claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 before the district court in which the parties "can develop an adequate record on the issue." *United States v. Daniel*, 956 F.2d 540, 543 (6th Cir.1992). Although there is a limited exception to this rule, when the record is adequate to assess the merits of the defendant's allegations, we do not believe that this exception applies in the present case. *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990).

Defendant argues that his trial counsel erred in his trial strategy by trying to make the arresting officer, Officer Muhic, seem like he resented defendant because he had previously arrested defendant for murder, but the charges had been dropped. Because this issue was not raised before the district court, defendant's trial counsel has not been afforded an opportunity to answer this charge against him, and the reasons for his trial strategy lie completely outside the record. This court would have to decide, without the benefit of a district court hearing, whether defendant has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and whether the "challenged action" constitutes "sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). We find that defendant's failure to raise this issue before the district court precludes us from addressing this claim. *United States v. Straughter*, 950 F.2d at 1234–35.

## III.

Defendant's motion to suppress alleged that the evidence seized from his residence and car was by virtue of a search warrant based on an affidavit containing materially false statements. The warrant at

issue was approved by the district court on July 24, 1995. Attached to the search warrant was the affidavit of Detective James Muhic, which contained the following sworn affirmations of fact:

6. Affiant knows [defendant] Hill on sight because of previously investigating Hill with respect to a homicide investigation....

10. Periodic surveillance conducted over the past three months, *with the most recent surveillance being within the past seventy-two hours,* has revealed that Hill often departs from 3836/3838 East 149th Street, and goes to a gray house on East 61st Street....

12. Within the past forty-eight hours, affiant took four garbage bags from the tree lawn of 3836/3838 East 149th Street. In one bag there was found many small plastic bags with the corners cut out....

(emphasis added). The warrant based on this affidavit was executed on the afternoon of July 24, 1995 and resulted in the discovery and confiscation of the various drugs and drug-related items previously described.

Defendant argues that the factual affirmation in italics indicating that officers had surveilled him in the 72 hours preceding the request for the search warrant on July 24th was untrue, because he had been attending a family reunion in Detroit, Michigan on July 21st through 23rd, and the officers could not have surveilled him during the 72 hours prior to July 24th. Defendant gave the district court receipts from the hotel where he had stayed from July 21st through July 23rd, and argued that the receipts prove that the affidavit on which the warrant was based contained statements that were contrary to fact. Defendant argued before the district court that he should be given an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) to determine if the inaccuracy in the affidavit invalidated the search warrant.

The district court conducted a hearing to resolve the inconsistency regarding the most recent time period in which defendant had been under surveillance. The record indicates two affidavits and two search warrants

had been issued. Detective Muhic testified that he first presented an affidavit and application for a search warrant to the district court on July 21, 1995, and that the court had issued an original search warrant based on the evidence accumulated at that point. Even though Detective Muhic decided not to execute the original warrant, he retained a copy of it with the original affidavit.

Officer Muhic decided to search more trash bags on July 24th for further evidence of drug trafficking and to obtain a second warrant. The original supporting affidavit, which was still in the computer, was revised to reflect the newly acquired information. Muhic merely added a new final paragraph to the original affidavit, describing the evidence found in the July 24th search of the trash bags, and neglected to correct the surveillance times indicated in paragraph 10 of the original affidavit. He then sought and obtained a second search warrant on July 24, 1995 based on the amended affidavit, which contained the identical language of the original affidavit about the most recent surveillance of defendant.

The district court stated the following in regard to the alleged false statement and defendant's request for a *Franks* hearing:

Upon a review of all the evidence and testimony presented at the hearing, it is clear to this Court that the affidavit in support of the executed search warrant contained inaccurate statements relating to the time period in which the defendant was under surveillance. However, it is just as clear that these inaccuracies were only errors created by the issuance of two nearly identical search warrants within three days. The Court finds that the seventy-two hours in which the defendant was surveilled, as stated in the affidavit, refers to the seventy-two hours preceding July 21, 1995 and not the seventy-two hours before July 24, the date the search was actually conducted. Further, the affidavit was not based only on the surveillance conducted during those seventy-two hours but also on the investigation conducted during the previous three months. Applying the *Franks* test, the affidavit, read as a whole, establishes probable cause for the

July 24th search, irrespective of whether the defendant was surveilled at his residence during the July 21–23 period.

Accordingly, Defendant's request for a hearing on his motion to suppress is **DENIED.**

On appeal, the United States concedes that the statement concerning the most recent surveillance, as applied to the second search warrant, inaccurately placed defendant in Cleveland from July 21 through July 23, when he was actually in Detroit. The United States argues that although the search warrant affidavit contained an inaccuracy regarding the time period during which the defendant had been most recently surveilled by law enforcement officers, the district court correctly determined that the sufficiency of the supporting affidavit did not depend on the time frame of the most recent surveillance. The United States argues the district court properly concluded that the amended affidavit, read as a whole, established probable cause irrespective of the time period during which defendant had been most recently surveilled, and that the challenged averments were therefore not necessary to a finding of probable cause.

■■■ This court reviews the district court's factual findings on suppression issues for clear error, and the court's legal conclusion under a *de novo* standard. *United States v. Baro*, 15 F.3d 563, 566 (6th Cir.), *cert. denied*, 513 U.S. 912, 115 S.Ct. 285, 130 L.Ed.2d 201 (1994). Counsel can attack the validity of a search warrant by alleging that the affidavit contains deliberately false statements. *Franks v. Delaware*, 438 U.S. at 171, 98 S.Ct. at 2684. Under *Franks,* a defendant must satisfy a two-prong test to obtain an evidentiary hearing. First, a defendant must make a "substantial preliminary showing" that specified portions of the affiant's averments are deliberately or recklessly false." *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir.), *cert. denied*, 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989). The second prong of the *Franks* test requires a court to find that the challenged statements are necessary to a finding of probable cause. If exclusion of the inaccurate statement would leave the affidavit with insufficient content to establish probable cause, then the warrant is invalid. *Id.* at 171, 98 S.Ct. at 2684.

■■■ In the present case, even if the first prong of the *Franks* test were met (although there was no evidence of recklessness), the second prong was not met because, overall, the affidavit contains sufficient probable cause even when the inaccurate statement is set aside. *United States v. Ayen,* 997 F.2d 1150, 1153 (6th Cir.1993). A probable cause determination by a judicial officer issuing a search warrant must be upheld if, under the "totality of the circumstances," the issuing officer had a "substantial basis" for finding probable cause. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Probable cause requires "only a probability or substantial chance of criminal activity." *Id.* at 243–45 n. 13, 103 S.Ct. at 2335 n. 13. The July 24th affidavit in the present case established that the affiant was an experienced narcotics investigator; that defendant had prior convictions for drug trafficking and weapons violations; that information received from a confidential informant, whose reliability had been established in prior investigations, indicated that defendant engaged in drug trafficking on a regular basis and that he maintained drugs, money, and weapons at the location to be searched; that periodic surveillance of defendant in the prior three months had corroborated in significant part the information provided by the confidential informant; that marijuana residue had been found in a garbage bag recovered from the tree lawn on the premises to be searched within ten days of the preparation of the final affidavit; and that cocaine residue and packaging materials indicative of drug trafficking had been found inside trash bags left on defendant's tree lawn within the twenty-four hours before the preparation of the final affidavit.

We believe that these facts provide ample reason to believe that defendant was presently engaged in the sale and distribution of illegal drugs and that evidence of drug trafficking activity would be found at his place of residence. This conclusion is valid whether defendant was surveilled at his residence or in Cleveland during the period immediately preceding July 24th or in the seventy-two

hours before July 21st when the first warrant had been obtained. Because the sufficiency of the affidavit does not depend solely on defendant's whereabouts during the July 21–23 period, we believe the district court properly rejected defendant's attempt to challenge the veracity of the affidavit based merely on the fact that Officer Muhic forgot to update the time period when the last surveillance occurred when he amended the affidavit and obtained the second search warrant. Evidence found in the early morning search of trash bags on July 24th was sufficient to indicate continued drug trafficking. Defendant's claim that other people used the premises is unavailing, because the warrant was to search the premises, not the person, of defendant Hill. *See United States v. Cummins,* 912 F.2d 98, 103 (6th Cir.1990). For all these reasons, we affirm the district court's denial of defendant's motion to suppress and the court's denial of an evidentiary hearing pursuant to *Franks v. Delaware.*

### IV.

■ Defendant also contends the evidence at trial was insufficient to support his conviction for possession with intent to distribute cocaine base and marijuana. The standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond any reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

■ Defendant Hill contends that the evidence is insufficient because he was never seen or caught selling drugs. Defendant also contends that there was insufficient evidence to establish that the drugs and paraphernalia found on the third floor of his residence were his, because others had access to the third floor and there was no direct evidence to connect him with the drugs and paraphernalia seized. He contends that several of his associates, who were suspected to be involved in drug trafficking, were seen by his father using the third floor of his residence during the three days immediately preceding

the July 24, 1995 search. He argues that the police did not surveil the residence on these days, and, therefore, could not rule out the possibility that these suspects brought the drugs and paraphernalia to his residence unbeknownst to defendant.

■ We do not believe that defendant's arguments have any merit. Contrary to defendant's contention, it was entirely reasonable for the jury to infer that defendant constructively possessed the substances in question given the fact the contraband was found in his bedroom or living quarters, along with a large assortment of letters, receipts and personal papers bearing his name and address. The conclusion that defendant constructively possessed the illegal drugs was further supported by the fact that defendant was shown to be in actual, physical possession of various items commonly used to conduct drug trafficking activity, including a paging device, a cellular phone, and large sums of U.S. currency, as well as a key used by law enforcement personnel to gain access to his third floor living quarters. Defendant's challenge to the sufficiency of the evidence—which relies on largely uncorroborated testimony the jury was not required to credit and inferences that the trier of fact was not required to draw—ignores the requirement of *Jackson v. Virginia,* that on appeal the evidence be viewed in the light most favorable to the prosecution. The standard to be applied may be satisfied with circumstantial evidence alone, and the proof need not be such that it excludes "every reasonable hypothesis except that of guilt." *United States v. Peters,* 15 F.3d 540, 544 (6th Cir.), *cert. denied,* 513 U.S. 883, 115 S.Ct. 219, 130 L.Ed.2d 146 (1994).

It is well-established that intent to distribute may be inferred from the value and quantity of the drugs in question. *See United States v. August,* 984 F.2d 705, 712–13 (6th Cir.1992), *cert. denied,* 510 U.S. 854, 114 S.Ct. 158, 126 L.Ed.2d 119 (1993). The testimony presented at trial indicated that the 78 grams of cocaine base at issue, if sold in 1/8th ounce increments, had a street value of approximately $6,500 and that the approximately 4.4 kilograms of marijuana, if sold in one pound increments, had a market value of at

least $10,800. The trial testimony further indicated that the drug quantities were not consistent with personal consumption and that the presence of such items as a scale, a blender, currency, razor blades and packaging materials supported the conclusion that the drugs were possessed for purposes of distribution.

 A conviction for possessing a controlled substance with intent to distribute can be based upon a showing of actual or constructive possession. *United States v. Verners,* 53 F.3d 291, 294 (10th Cir.1995). A jury "is entitled to infer that a person exercises constructive possession over items found in his home." *United States v. Morris,* 977 F.2d 617, 620 (D.C.Cir.1992). Defendant's use and occupancy of the third floor premises and his ability to exercise dominion and control over the drugs and paraphernalia recovered from these premises was sufficiently demonstrated. Defendant's parents testified that he used the third floor as his living quarters or bedroom. The third floor was secured by a padlock, which members of the task force unlocked at the time of the search by using a key found earlier in the afternoon in defendant's possession. The third floor contained items of male clothing and a large collection of envelopes, receipts, and other personal papers bearing defendant's name and address, indicating his use of the premises. Further evidence that defendant constructively possessed the drugs and drug implements recovered from his third floor living quarters was provided by his attempt to disassociate himself from that area by claiming that his bedroom was downstairs, when actually it was his sister's bedroom and had only female clothing in it. *See United States v. Calhoun,* 49 F.3d 231, 236 (6th Cir.1995).

The jury was entitled to choose from among reasonable constructions of the evidence the drug possession theory they felt was based on the evidence. *United States v. Forrest,* 17 F.3d 916, 919 (6th Cir.), *cert. denied,* 511 U.S. 1113, 114 S.Ct. 2115, 128 L.Ed.2d 673 (1994). Based on the evidence presented at trial, a rational trier of fact could conclude beyond a reasonable doubt that defendant knowingly and intentionally possessed with the intent to distribute the controlled substances found in the third floor apartment. The district court is affirmed on this issue.

## V.

 Finally, defendant contends the district court erred in failing to inquire, before pronouncing sentence, as to whether defendant affirmed or denied the convictions on which his sentence enhancement pursuant to 21 U.S.C. § 851(a) was based.

21 U.S.C. § 851(a) provides that no person convicted of an offense under the drug abuse prevention and control provisions shall be sentenced to increased punishment by virtue of prior convictions unless the U.S. Attorney files an enhancement information before trial. Section 851(b) states:

> If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

Congress enacted section 851 as a measure of protection against section 841's harsh sentence enhancement mechanisms. *United States v. Novey,* 922 F.2d 624, 628 (10th Cir.), *cert. denied,* 501 U.S. 1234, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991). Section 851(a)(1) imposes a jurisdictional requirement granting the district court jurisdiction to enhance a defendant's sentence only when the United States attorney files an information with the court, stating in writing the previous convictions to be relied on. Once the prosecution has filed a timely notice of its intention to enhance a defendant's sentence if convicted, section 851(b) requires the judge at the sentencing hearing to engage in a colloquy with the convicted defendant before enhancing his sentence in order to offer the defendant the opportunity to challenge the prior convictions before they can be used for enhancement purposes.

The United States concedes that the district court failed to comply with section 851(b), but imposed a life sentence nonetheless. The United States argues that the district court's failure to ask whether defendant affirmed or denied the convictions upon which his sentence was enhanced and to further inform defendant of his opportunity to challenge the prior convictions is harmless error and does not invalidate defendant's sentence. The United States argues that the courts of appeals which have considered this question hold that a failure to engage in the colloquy required by section 851(b) is subject to a harmless error analysis. *United States v. Arango–Montoya,* 61 F.3d 1331, 1339 (7th Cir.1995); *United States v. Romero–Carrion,* 54 F.3d 15, 18 (1st Cir.1995); *United States v. Fragoso,* 978 F.2d 896, 902 (5th Cir.1992), *cert. denied,* 507 U.S. 1012, 113 S.Ct. 1664, 123 L.Ed.2d 282 (1993). Other courts point out that section 851(e) states, "No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." *United States v. Housley,* 907 F.2d 920 (9th Cir.1990); *United States v. Weaver,* 905 F.2d 1466, 1482 (11th Cir.1990), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991); *United States v. Nanez,* 694 F.2d 405, 412 (5th Cir.1982), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983). As the court in *Nanez* stated neither the statute nor reason "requires a trial court to adhere to the rituals of section 851(b) where a defendant, as a matter of law [pursuant to § 851(e) ], is precluded from attacking the conviction forming the basis of the enhancement information." *Id.* at 413. In the present case, section 851(e) prohibits collateral attack of defendant's prior convictions, which occurred five years before the information was filed.

Also, the Court of Appeals for the Fifth Circuit held that there is no reason for a district court to conduct a hearing on the validity of the prior convictions when a defendant fails to first meet the requirements of 21 U.S.C. section 851(c), which requires that a defendant give advance notice concerning the basis of his challenge. *United States v. Garcia,* 954 F.2d 273, 278 (5th Cir. 1992). In the present case, defendant did not object to the presentence report, which referred to his prior convictions. He also did not object at sentencing when the United States submitted certified copies of defendant's two prior drug convictions for the district court's inspection. There is thus no indication in the record that defendant ever complied with the mechanisms of section 851(c) to notify the district court that he would challenge these convictions.

For these reasons, we believe the district court's failure to engage in the colloquy described in section 851(b) is harmless. First, notwithstanding repeated opportunity, defendant did not challenge his prior convictions before the district court. Second, since all prior convictions relied upon by the district court occurred more than five years before the filing of the information in the present case, defendant is barred from challenging their validity. 21 U.S.C. § 851(e). Accordingly, the district court's failure to comply with section 851(b) was harmless error.

### VI.

The opinion of the district court is hereby **AFFIRMED.**