NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0587n.06
Filed: October 1, 2008

# United States Court of Appeals

## FOR THE SIXTH CIRCUIT

No. 06-6304

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the Middle |
| | * District of Tennessee. |
| Lamarr Fletcher, | * |
| | * |
| Defendant - Appellant. | * |

Before: MARTIN, GRIFFIN, and GIBSON,* Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Lamarr Fletcher was found guilty by a jury of nine counts of narcotics trafficking under 21 U.S.C. §§ 841 & 846, including conspiracy to distribute cocaine; possession with an intent to distribute cocaine, cocaine base, and marijuana; and distribution of cocaine and cocaine base. The district court sentenced Fletcher to 168 months' imprisonment. After Fletcher's third attorney withdrew from the case, Fletcher represented himself. He had a fourth attorney serving as standby counsel, through trial and at sentencing, but he has obtained counsel for this appeal. Fletcher's

---

*The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

counsel raises several arguments, and Fletcher filed a pro se brief raising several more complaints. We affirm in all respects.

Wilson County Police Detective John Edwards launched a drug investigation based on information he received from the Mt. Juliet Police Department, which was using a confidential informant. On February 18, 2003, under the surveillance of Edwards and others, the informant conducted a controlled buy at the residence of Don Howard in Wilson County, Tennessee. Howard was not home, but the informant was able to solicit powder cocaine from Howard's girlfriend, Rebecca Adcock. Adcock did not have the cocaine requested on hand, so she called "Lamont" Fletcher and asked for an "eighth" of powder cocaine. Shortly thereafter, Howard arrived. Police then observed Fletcher arrive in a white Jeep Cherokee, greet Howard, and follow Howard inside the residence. There was audible recording of Fletcher providing .9 grams of cocaine to the confidential informant.

Police conducted another controlled buy at Howard's residence on March 20, 2003, between the same confidential informant and Howard. After the informant arrived, Howard was observed getting into and riding a few hundred yards in a white Jeep Cherokee. When he returned, he sold the informant 2.7 grams of crack cocaine. When the informant turned the cocaine over to police, it was weighed, and they determined that the informant had not received the proper amount of cocaine for the money paid. The informant phoned Fletcher, who told the informant, "I done took him [Howard] four, three or four more grams over there man . . ." Police then followed the informant back to Howard's residence, where the informant received .8 more grams of crack cocaine from Howard.

Police then shifted their investigation to Ben Bashaw because the informant was able to purchase drugs directly from Bashaw. Bashaw, who testified for the government, was a long-time friend of Fletcher. He testified that in 2003 he and Fletcher drove to Chicago on three occasions to purchase resale quantities of cocaine

from a man Fletcher met in jail, Ben Martinez. Bashaw estimated that they purchased .5 kilograms of cocaine on the first trip and between .5 and 1 kilogram of cocaine on the second trip. He was unsure how much they purchased on the third trip. Bashaw also testified that Fletcher made additional trips to Chicago without Bashaw to purchase more narcotics.

Fletcher's girlfriend, Jewell Jones, testified pursuant to a court order compelling her testimony in exchange for limited use immunity. She stated that she took two trips to Chicago with Fletcher in 2003 to purchase cocaine from Martinez. She estimated that he purchased 2.5 kilograms of cocaine on the second trip. She also testified that Fletcher sold both crack cocaine, which he cooked at home, and powder cocaine. She also knew that he rented a storage unit where he kept his drugs.

Martinez also testified against Fletcher. He stated that on three occasions between late 2001 and the middle of 2002 he sold Fletcher .25 kilograms, .75 kilograms, and 1 kilogram of cocaine. Martinez also testified that he introduced Fletcher to another man called "Benjamin," from whom Fletcher purchased a kilogram of cocaine on each of two or three occasions.

Fletcher was arrested on October 21, 2003 when police from several different law enforcement agencies arrived at his residence with an arrest warrant. Fletcher left the residence voluntarily and was taken into custody by a SWAT officer from the Metro Police Department. They seized from his person $1,473 cash and two bags containing 27.6 grams and 3.6 grams of cocaine. Jewell Jones, John Wayne Corder, and Jones's small child were inside the residence. Corder was found to be in possession of $3,000 cash at the time of Fletcher's arrest. Jones testified that when Fletcher learned police were outside, she observed him give Corder the cash and throw a bag of marijuana into the attic. She also observed Fletcher flush marijuana down the toilet, and she claimed Fletcher told her to carry out three ounces of cocaine, which she hid in a hamper.

After his arrest, Fletcher signed a consent to search form presented to him by Detective Edwards. A search of Fletcher's house resulted in the seizure of 84 grams of cocaine from the child's bedroom, 29 one ounce bags of marijuana from the attic, an application for a social security card and birth certificate in the name of Ben Martinez, a cellular telephone, and digital scales. The officers saw what appeared to be marijuana residue in the toilet and found a white Jeep Cherokee on the property.

Pursuant to jail procedures, Fletcher's phone calls were monitored while he was in custody. Police recorded a conversation between Fletcher and Jones where she suggested that police had missed something, during their search of the attic. Police used this information to obtain a search warrant for Fletcher's residence. The warrant issued and was executed on October 24, 2003. Police found no additional drugs, but they seized a lease in Fletcher's name for a storage unit in Nashville, Tennessee. Police went to the storage unit, where a drug dog positively alerted for the presence of drugs. After obtaining a state search warrant for the unit, police seized 986.1 grams of cocaine wrapped in individual bags and all stored in a shopping bag from a Chicago store.

I.

Before trial, Fletcher moved for early disclosure of all "Jencks material" and immediate disclosure of all impeachment material that the government possessed for its witnesses. The government opposed the motions and the district court denied them. "We review a district court's rulings on Jencks Act issues for abuse of discretion." United States v. DeFranco, 30 F.3d 664, 667 (6th Cir. 1994). Fletcher admits that the government disclosed nearly all of the Jencks material the week prior to trial. He complains, however, that the government was obligated to turn it over sooner. The Jencks Act is clear: it requires production of impeachment material only after a "witness has testified on direct examination in the trial of the case." 18 U.S.C.

-4-

§ 3500(a).[1] Therefore, any materials disclosed prior to trial exceeded the government's obligations under the Act.

The only material Fletcher specifically identifies in his brief as having never been disclosed was material from the proffer sessions of government witness Ben Bashaw. The government claims it could not disclose the alleged statement because a report was not made of the proffer session.[2] The defendant bears the burden of proving that a "statement" for purposes of the Jencks Act exists and is covered by the Act's disclosure requirements. See United States v. Dark, 597 F.2d 1097, 1099 (6th Cir. 1979) (holding that "trial court was under no obligation to examine the file in camera, since there was no basis for belief that a Jencks Act 'statement' existed other than those already furnished defense counsel"); accord United States v. Grecni, 1991 WL 139703, at *5 (6th Cir. 1991) (unpublished) ("A district court need not even conduct an in camera review unless the defendant meets the initial burden of showing that a certain document exists, that the document qualifies as a statement under the Jencks Act, and that the government violated the law by failing to provide the defendant with the document.") (citing United States v. Allen, 798 F.2d 985, 996 (7th Cir. 1986)). Fletcher produced no evidence contradicting the government's contention that Bashaw's proffer session was not recorded, transcribed or reduced to

---

[1]The relevant text of the statute reads, "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use." 18 U.S.C. § 3500(b).

[2]The prosecutor subsequently prepared a brief summary of the post-arrest proffer session with Bashaw and provided it to the defendant, disclosing that Bashaw's proffer and his testimony before the grand jury were inconsistent as to the number of trips he and Fletcher made together to Chicago.

a writing that Bashaw signed or adopted. A "statement" for Jencks Act includes only (1) a "written statement made" and "signed or otherwise adopted" by the witness, (2) a "substantially verbatim recital of an oral statement . . . by [the] witness . . . recorded [or "transcribed"] contemporaneously with the making of [the] oral statement," or (3) "a statement, however taken or recorded . . . made by said witness to a grand jury." 18 U.S.C. § 3500(e). Fletcher cannot prove a violation of the Act without showing that a "statement" existed. Therefore, relief is not warranted.

In an attempt to overcome the clear text of the statute, Fletcher claims that the government's failure to disclose earlier impeachment material also violated his due process rights under Brady v. Maryland, 373 U.S. 83, 87 (1963), to all "material exculpatory evidence" possessed by the government, including impeachment evidence of government witnesses. See also United States v. Bagley, 473 U.S. 667, 676 (1985) ("Impeachment evidence, however, as well as exculpatory evidence, falls within the Brady rule."). The rule in this circuit, however, is clear that "[w]hen Brady material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure." United States v. Davis, 306 F.3d 398, 421 (2002) (quoting United States v. Bencs, 28 F.3d 555, 561 (6th Cir. 1994)). Moreover, "Brady generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." Id. (internal quotation marks omitted). Most of the impeachment material Fletcher requested was disclosed prior to trial, and pretrial disclosure more than satisfies the requirements of the Jencks Act. It follows, then, that Fletcher's rights under Brady were also satisfied.

With regard to Bashaw's proffer session, the government voluntarily disclosed to Fletcher the fact that Bashaw said that he only made two trips to Chicago with Fletcher, despite the fact that he would testify at trial that he made three trips. Fletcher had the impeachment information well in advance of cross-examination. In fact, he did cross-examine Bashaw about the inconsistency and Bashaw admitted to

it. Fletcher cannot show, then, that the government failed to disclose "material exculpatory evidence." Brady, 373 U.S. at 87.

## II.

Fletcher argues that there was insufficient evidence to support the jury's drug quantity findings by proof beyond a reasonable doubt. He relies on Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. We review Apprendi violations for harmless error. Campbell v. United States, 364 F.3d 727, 737 (6th Cir. 2004).

Based solely on the fact of conviction for distributing cocaine or cocaine base, Fletcher was exposed to a maximum sentence of twenty years in prison. See 21 U.S.C. § 841(b)(1)(C) (distribution or possession with an intent to distribute an indeterminate amount of a schedule I or II substance carries a maximum sentence of 20 years) & 21 U.S.C. § 812(a)(4) (cocaine is a Schedule II substance); accord United States v. Burns, 298 F.3d 523, 544 (6th Cir. 2002) ("[A] defendant convicted of conspiring to distribute any quantity of crack cocaine, no matter how low, is subject to a maximum sentence of 20 years in prison."); United States v. Serrano-Lopez, 366 F.3d 628, 638 (8th Cir. 2004) ("The statutory maximum for possession with intent to distribute an indeterminate amount of cocaine is twenty years when neither 'death [n]or serious bodily injury results'. . . ."). By finding Fletcher responsible for "5 kilograms or more of a mixture . . . containing cocaine" (Count I), the jury exposed him to an enhanced statutory maximum sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(ii)(II). But Fletcher was only sentenced to fourteen years, which is well below the 20 year statutory maximum sentence authorized without the jury's drug quantity findings. § 841(b)(1)(C). We have held that "Apprendi is not triggered where the defendant receives a term of imprisonment within the statutory maximum

that would have applied even without the enhancing factor (such as the drug amount)." Burns, 298 F.3d at 544. In Burns, we held that Apprendi was not violated when the district court failed to require the jury to determine, beyond a reasonable doubt, the amount of crack cocaine for which the defendants were responsible because the sentence imposed on each defendant was below the twenty year sentence authorized by 21 U.S.C. § 841(b)(1)(C). Id. (referring to defendants A. Harden, J. Harden, and Jordon); accord Serrano-Lopez, 366 F.3d at 638 (holding that "[w]hen a defendant is sentenced to a term that does not exceed the statutory maximum allowed for an indeterminate amount of the drug involved, the jury's determination of drug quantity is practically irrelevant"); see also United States v. Zidell, 323 F.3d 412, 430 (6th Cir. 2003) (stating that drug quantity finding was only an element of the offense because it increased the applicable statutory maximum sentence). Consequently, Apprendi is not implicated in this case, and even if Fletcher convinced us that the proof at trial was insufficient to support the jury's drug quantity findings, the error was harmless because those quantity findings did not affect his ultimate sentence.

To the extent that Fletcher's argument might be construed as an attack on the district court's calculation of his Guidelines' advisory sentencing range, we conclude any error in the district court's drug quantity determination is also harmless. We review a sentencing court's drug quantity findings for clear error. United States v. Charles, 138 F.3d 257, 267 (6th Cir. 1998). We have some doubt about the accuracy of the district court's exact drug quantity finding of 2,539.751 kilograms of marijuana or 12.7 kilograms of cocaine, which was based largely on testimonial evidence. The district court adopted the finding alleged in the presentence report and used the methodology described in that report. The presentence report assigned responsibility to Fletcher for 10.8864 kilograms of cocaine solely based on co-conspirator Bashaw's statement to police that he had been "purchasing eight to nine ounces of cocaine, two or three times per month, for the past two years." But the government offered no proof in support of this statement, which appeared in the record for the first time in

the presentence report. It did appear in Agent Hale's report of investigation, but we find no place in the record where Hale's report was admitted into evidence either at trial or at sentencing. Although Bashaw testified at trial, he did not recite this fact. Neither did Agent Hale when he testified at trial. At sentencing, the government presented no proof. When a defendant objects to a sentencing fact, the "court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." United States v. Ross, 502 F.3d 521, 531 (6th Cir. 2007) (internal quotation marks omitted), cert. denied, 128 S. Ct. 1723 (2008). Therefore, the district court erred in finding Fletcher responsible for 10.8864 kilograms of cocaine purely on the basis of statements in the presentence report.

Although we are troubled by the district court's sole reliance on the presentence report, which is not evidence, we conclude the error was harmless. The district court's drug quantity finding resulted in an offense level of 32, which applies if Fletcher is responsible for at least 5 kilograms but less than 15 kilograms of cocaine. U.S.S.G. § 2D1.1(c)(4). Even if we ignore the post-arrest statement by Bashaw, we conclude there was sufficient evidence, applying the preponderance standard, to hold Fletcher accountable for at least 5 kilograms of cocaine. Three witnesses, Martinez, Bashaw, and Jones, testified at trial that they took separate trips to Chicago with Fletcher to purchase cocaine. Martinez testified that Fletcher purchased at least 2 kilograms during their three trips; Bashaw's testimony provides support for another 2 kilograms; and Jones estimated that Fletcher purchased 2.5 kilograms during their second trip to Chicago. That brings the total amount of cocaine attributable to Fletcher, based solely on the testimony of these witnesses, to 6.5 kilograms—greater than the 5 kilograms required to support the application of an offense level of 32. Therefore, Fletcher's advisory sentencing range was unaffected by the district court's error. Moreover, nothing in the record suggests to us the district court would have imposed a different sentence had Fletcher been responsible for less than 12.7 kilograms of cocaine. Consequently, we affirm the sentence.

III.

Fletcher argues that police lacked probable cause to obtain a search warrant to conduct a second search of his residence while he was in custody. He requested a Franks hearing to produce evidence that the warrant was procured through fraud or through reckless disregard for the truth, which the district court denied. Under Franks v. Delaware, 438 U.S. 154 (1978), an evidentiary hearing is required only where counsel raises "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." Id. at 171. To obtain an evidentiary hearing, a defendant must satisfy a two-part test. United States v. Hill, 142 F.3d 305, 310 (6th Cir. 1998). First, a "defendant must make a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." Id. (internal quotation marks omitted). Second, the challenged statements must be necessary to a finding of probable cause. "If exclusion of the inaccurate statement would leave the affidavit with insufficient content to establish probable cause, then the warrant is invalid." Id.

"We review the district court's denial of a Franks hearing under the same standard as for the denial of a motion to suppress: the district court's factual findings are reviewed for clear error and its conclusions of law are reviewed de novo." United States v. Graham, 275 F.3d 490, 505 (6th Cir. 2001). To obtain the warrant, police relied on a recorded telephone conversation between Fletcher, who was in custody at the time, and Jones. During the conversation, Jones alluded to the fact that police missed contraband during the search of Fletcher's attic. In particular, she stated, "I know it wasn't bothered by them so I'm just saying I know it's there somewhere just you know." Fletcher argues that since police searched the attic previously, they knew there was no contraband present and deliberately misled the court when they used this conversation as a basis for the warrant. Fletcher's conversation with Jones would lead a reasonable person to conclude that police might have missed contraband during their initial search. Fletcher points to no evidence which would show that the police

-10-

statements in the affidavit for a warrant were deliberately or recklessly false. We also conclude that the conversation between Fletcher and Jones established "a probability or substantial chance" that police missed contraband during the first search and, thus, probable cause existed for issuance of a search warrant. Hill, 142 F.3d at 310 (quoting Illinois v. Gates, 432 U.S. 213, 243-45 (1983)).

IV.

Fletcher consented to the first search of his residence. He argues however that his consent was not given intelligently and voluntarily because 1) Detective Edwards did not identify himself as a member of the Wilson County Sheriff's Department, a department Fletcher was actively suing in civil court, and 2) Fletcher was intoxicated when he granted police consent to search. The district court denied the motion to suppress. "Consent to a search, in order to be voluntary, must be unequivocal, specific and intelligently given, uncontaminated by any duress or coercion, and is not lightly to be inferred." Simmons v. Bomar, 349 F.2d 365, 366 (6th Cir. 1965).

We review Fletcher's intoxication argument for plain error because it was not specifically raised below. "Plain-error review requires us to determine whether (1) there was an error, (2) the error was obvious or clear, (3) the error affected the defendant's substantial rights, and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." United States v. Erpenbeck, 532 F.3d 423, 444 (6th Cir. 2008) (internal quotation marks omitted). Although Fletcher testified he had been drinking the night before the search, he denied that he was drinking "heavily." The two police officers who obtained his written consent testified that, even though they smelled alcohol on his breath, he did not seem impaired, was not swaying or unsteady, had no trouble signing the consent form, and appeared to be coherent. Based on the testimony of the officers, then, it is evident that Fletcher gave consent voluntarily; no "obvious or clear" error occurred.

Since Fletcher raised the scope of consent issue in the court below, we review for clear error the district court's factual findings and de novo its legal conclusions. Graham, 275 F.3d at 505. Fletcher argues that police exceeded the scope of his consent by allowing Wilson County officers, such as Detective Edwards, to conduct the search of his residence. Fletcher was involved in a civil lawsuit against the Wilson County Sheriff's Department, and he argues that officers should have identified themselves as such before obtaining consent to search his home. Fletcher cites no case law in support of his argument. Rather, Fletcher relies upon the fact that he had the right to limit the scope of his consensual search. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 250-51 (1991). Fletcher signed a consent to search form authorizing the search of his residence. He points to no evidence that he expressed an intent to exclude certain people from the scope of his consent. Neither does he bring to our attention any evidence that the specific officers were aware of his lawsuit against the department. Therefore, there is no evidence that a reasonable officer had any reason to interpret Fletcher's consent to search as anything other than general. Consequently, the district court did not err in denying Fletcher's motion to suppress.

Fletcher also argues that police did not inform him of his Miranda rights following his arrest and interrogation, and that his post-arrest statements "should be excluded." This issue basically devolves into a credibility determination. Detectives Edwards and Ezell both testified that Edwards read Fletcher his Miranda rights, but their accounts differ as to who supplied the waiver form. Such a minor inconsistency, not relevant to whether Fletcher was actually read his rights, is insufficient for us to hold that the district court clearly erred in finding that Fletcher was informed of his constitutional rights.

V.

-12-

Fletcher argues the district court erred in not granting him a new trial. We will reverse the district court's denial of a motion for a new trial only if there was a clear abuse of discretion. United States v. Seago, 930 F.2d 482, 488 (6th Cir. 1991). The majority of Fletcher's arguments for a new trial relate to the credibility of the witnesses. We give great deference to a fact finder's credibility determinations, United States v. Dillard, 438 F.3d 675, 681 (6th Cir. 2006), cert. denied, 127 S. Ct. 291, and our review of the record satisfies us that the district court did not err in denying Fletcher's motion for a new trial in light of the substantial evidence introduced against him, which included controlled buys, the seizure of large quantities of drugs and drug distribution equipment either in Fletcher's possession or under his control, and the testimony of co-conspirators.

## VI.

We reserve review of Fletcher's ineffective assistance of counsel claims in light of our practice to "generally . . . not review ineffective assistance of counsel claims on direct appeal because the record is insufficiently developed to assess the merits of such claims." United States v. Davis, 306 F.3d 398, 422 (6th Cir. 2002). Finally, we conclude that the arguments raised in Fletcher's pro se supplemental brief are without merit.

## VII.

For these reasons, the judgment of the district court is AFFIRMED.