NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0052n.06

No.  11-1052

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
***Jan 09, 2013***
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MICHAEL CHARLES TRAYLOR, JR., | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

Before:       **KEITH, CLAY, and ROGERS, Circuit Judges.**

**KEITH, Circuit Judge.**  Defendant-Appellant Michael C. Traylor, Jr. pleaded guilty to distributing heroin.  The district court found that Traylor distributed 500 grams of cocaine (100 kilograms of marijuana equivalency) and 426 grams of heroin (426 kilograms of marijuana equivalency), resulting in a total of 526 kilograms of marijuana equivalency.  The 526 kilograms of marijuana equivalency produced a base offense level of 28, which resulted in a sentencing guideline range of 78–97 months.  Traylor was sentenced, within the guideline range, to 82 months of imprisonment.

On appeal Traylor argues that the district court erred in finding him responsible for 526 kg of marijuana equivalency.  He argues, therefore, that the resulting base offense level of 28 was also an error and that the sentence of 82 months' imprisonment was unreasonable.  Because the district

1

court's findings were well supported by the record and the within-guideline sentence was not unreasonable, we **AFFIRM** the district court's judgment.

## BACKGROUND

This criminal case arises from a Saginaw, Michigan, police department's investigation of a heroin ring. Defendant Michael Traylor, Jr. was part of the ring, selling drugs. The investigation, which involved drug sales to informants and the execution of search warrants, resulted in Traylor's pleading guilty to the distribution of heroin, pursuant to a written plea agreement. The Rule 11 plea agreement noted the Defendant's and Government's disagreement as to the appropriate drug quantity that would be used to calculate Defendant's sentencing guideline range. The parties contested the issue at sentencing.

*Presentencing*

Prior to sentencing, Defendant participated in a presentence interview with the probation department, which in turn prepared a Presentence Investigation Report ("PSR"). Defendant did not object to most of the facts in the PSR, but did object to the estimated quantity of drugs attributed to him.

The PSR described some of Defendant's drug sales. One witness bought $40 worth of heroin from the drug ring each day from February 2008 to the end of April 2008. The witness stated that he purchased all of the drugs from the ring and from Traylor in particular "a couple of times." A different witness testified that he also purchased heroin from the ring. He purchased $40–70 worth of heroin each day. He stated that 0.2 grams of heroin usually cost $40, and he also purchased from Defendant two to four times. A third witness, Joshua Koste, bought 0.5 grams of heroin from

Defendant on about ten occasions. Koste stated that Traylor likely sold about 2.0 grams of heroin a day based on his observations.

The PSR also mentions a twelve-minute video, which features Defendant. In the video, Defendant admits to selling various drugs. The video shows Defendant pull a bag of white powder out of a kitchen cupboard. It also shows a saw with white residue and the people in the video, including Defendant, talking about using the saw to remove plastic wrap from a "brick," which a law enforcement officer later testified is a slang term for a large quantity of cocaine. According to the PSR, cocaine bricks range from 500 to 1,000 grams.

Based on the facts in the PSR, the probation officer concluded that Defendant was responsible for 526 kilograms of marijuana equivalency,[1] which reflected a base offense level of 28. The probation officer calculated the drug quantity as follows:

> TRAYLOR is being held responsible for distributing 2.0 grams of heroin per day from approximately February 2008 until approximately August 2008, equating to 426 grams or 426 kilograms of marijuana equivalency. In addition, he is being held responsible for 500 grams of cocaine based upon the brick referred to in the video. This equates to 100 kilograms of marijuana equivalency. A total of 526 kilograms of marijuana equivalency produced a base offense level of 28.

PSR ¶ 30 (emphasis in original).

Defendant filed objections to the PSR. Defendant argued that he did not distribute 2.0 grams a day during the entire period between February 2008 and August 2008, although he was willing to concede that he had distributed that amount during August 2008. Defendant, therefore, concludes

---

[1]Where a defendant has distributed more than one type of drug, a district court converts all quantities into their equivalents in marijuana, and uses the equivalent weight in marijuana to calculate the base offense level. 1 gram of cocaine is the equivalent of 200 grams of marijuana, and 1 gram of heroin is equivalent to 1,000 grams of marijuana. U.S.S.G. § 2D1.1.

that he was only responsible for distributing 68.28 grams of heroin, which would lead to a base level offense of 22. Defendant did not mention the brick of cocaine in his objection.

*Sentencing*

The district court held a sentencing hearing on December 20, 2010. The Government's cooperating witness, Joshua Koste, testified at the hearing. Koste testified that between November 2007 and March 2009, he purchased heroin from the drug ring. He testified that the ring always had heroin for sale. Koste testified that he usually purchased drugs from co-defendant Corey Haynes, but that he purchased heroin from Traylor about ten times. He stated that he usually purchased from Haynes because his prices were cheaper but that he could have purchased from Traylor every day if he wished.

Koste also testified that while he would purchase heroin from Traylor's co-defendants, he often observed Traylor at the same location selling heroin to other customers. Koste stated that he saw Traylor sell heroin a "few times a week." He testified that he would usually witness Traylor sell to between three and five people, who each bought about half a gram of heroin.

Also testifying at the sentencing hearing was DEA agent David McGovern, who participated in the investigation of Traylor's drug ring. During his testimony the Government played a clip of the video of Traylor that was mentioned in the PSR. Agent McGovern explained the clips as they were played in court. In the video, Traylor stated that he had just turned 22 years old, which led McGovern to conclude that the video was created in February 2008. McGovern stated that the plastic bag that Traylor removed from the cupboard likely contained an "8-ball" of cocaine–approximately one-eighth of an ounce. Agent McGovern stated that the saw likely had

4

cocaine residue and that the brick was likely a brick of cocaine, which is white, rather than heroin, which is brown.

Traylor also testified at the sentencing hearing. He testified that he was just "fooling around" in the video and that there was no brick of cocaine. He claimed that the dust on the saw was drywall and not cocaine. He claimed that the baggie that Agent McGovern claimed had an 8-ball of cocaine probably had marijuana in it. Traylor testified that he has never seen a brick of cocaine. He admitted that he sold heroin, even though he was unfamiliar with it, but only during August 2008. In May 2008 and July 2008 the police found Traylor carrying unexplained large quantities of cash–what the authorities interpret as evidence of drug dealing.

Following the presentation of witnesses, the district court found that the probation department's recommendation was reasonable and agreed that the evidence presented supported the finding that Traylor was responsible for distributing 500 grams of cocaine and 426 grams of heroin. Traylor was sentenced to 82 months of imprisonment.

## DISCUSSION

The district court found that Traylor was responsible for the distribution of 500 grams of cocaine and 426 grams of heroin, which supported a base offense level of 28. Traylor appeals that determination.

### A.      Standard of Review

Under the federal sentencing guidelines, a defendant's base offense level is calculated based on the quantity of drugs that he or she distributed. U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.12 (2009); *see also* U.S. Sentencing Guidelines Manual § 1B1.3(a)(2) & cmt. n.3 (2009). If a defendant distributed more than one kind of drug, the district court converts the drug quantities into

their respective marijuana equivalencies and uses the total equivalency to determine the base offense level. U.S. Sentencing Guidelines Manual § 2D1.1(c) & cmt. nn.6, 10, 12 (2009). A district court will estimate the quantity of drugs distributed if the amount is unknown. *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000).

"A district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should be upheld unless clearly erroneous." *United States v. Benson*, 591 F.3d 491, 502 (6th Cir. 2010) (internal citation and quotation marks omitted). The district court's determination must be supported by a preponderance of the evidence. *Id.*

B.      **Analysis**

The district court did not err in its estimate of the amount of drugs distributed by Traylor. Traylor argues that the district court's conclusion was not supported by a preponderance of the evidence. The Government responds that not only was the district judge's estimate supported by a preponderance of the evidence, but that the court's estimate was more conservative than it could have been. We agree.

Here, the district court based its calculation on the facts that were presented in the PSR—some of which were undisputed—and the evidence presented at the sentencing hearing. First, the district court did not err in finding Defendant responsible for at least 500 grams of cocaine. The homemade video showed Defendant bragging about a "brick," showing a saw with white powder on it (which allegedly came from the brick), and discussing how he and his colleagues cut the wrapper off of the brick. The district court relied on the statements in the video and the testimony of Agent McGovern to conclude that Defendant likely had a brick of cocaine that he cut up and distributed. Defendant presented his side of the story—that he was joking around and it was actually

6

dry wall—but the district judge determined that his testimony was not credible. While the video alone may not have met the government's burden with respect to a quantity, Defendant's testimony regarding the video supported the inferences drawn by the district court. Having found that Defendant's testimony was not credible, the court was able to fairly conclude that the DEA agent's testimony was more likely than not correct. Accordingly, the district court did not commit clear error in finding that Defendant was responsible for at least 500 grams of cocaine.

Second, the district court did not clearly err in estimating that Traylor sold two grams of heroin a day from February 2008 through August 2008. Traylor maintains that he only sold two grams of heroin a day in August 2008. The PSR contained allegations that could lead a court to conclude that Defendant had sold drugs from February 2008 until August 2008. And though the PSR itself is not evidence of quantity, *see United States v. Fletcher*, 295 F. App'x 749, 755 (6th Cir. 2008) (quoting *United States v. Ross*, 502 F.3d 521, 531 (6th Cir. 2007), *cert. denied*, 552 U.S. 1281 (2008)), the government presented one direct witness regarding quantity. That witness testified that he had purchased heroin from Defendant on approximately ten occasions, and that during the applicable period, he could have purchased heroin from Defendant on any particular day. There was also evidence, to which Defendant conceded, of several purchases for small quantities of heroin throughout the applicable time period. In May 2008 and July 2008 the police found Traylor carrying unexplained large quantities of cash, which supports the finding that he was dealing drugs. PSR ¶¶ 19, 21. In situations where a precise quantity cannot be fixed, courts are permitted to use estimates. *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990) ("If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the

estimate.") In this case, the government produced just enough direct evidence of sales and inferential evidence of continuous sales to meet its burden on this point.

Because we find no clear error in the district court's estimation of the drug quantities distributed, the resulting base offense level of 28 did not render the sentence procedurally unreasonable. The district court did not abuse its discretion when imposing a within-guideline sentence. *See United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) ("[All] sentences—whether inside, just outside, or significantly outside the Guidelines range—are reviewed under a deferential abuse-of-discretion standard.") (internal quotation omitted).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.